In the Interest of Clyde H. TIDWELL, Jennifer M. Tidwell, Bobby D. Sprayberry, Lewis J. Tidwell, and Samantha A. Tidwell, Children.

No. 06–99–00176–CV.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 29, 2000.

Decided Nov. 29, 2000.

Troy A. Hornsby, Miller, James, Miller, Wyly, Hornsby, LLP, Texarkana, for appellant.

Randal Lee, Crim. Dist. Atty., Linden, Tina M. Richardson, Cass County Dist. Atty.'s Office, Linden, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Elizabeth Tidwell appeals from a judgment terminating the parent-child relationship between her and her children, Clyde Tidwell (age eleven), Jennifer Tidwell (age nine), Bobby Sprayberry (age six), Lewis Tidwell (age four), and Samantha Tidwell (age one).[1] The court terminated Tidwell's parental rights pursuant to TEX.FAM.CODE ANN. § 161.001(1)(D), (E) & (O) (Vernon Supp.2000).[2] Tidwell contends that the evidence is legally and factually insufficient to support the trial court's finding that termination was appropriate under Subsection (D) or (E) of Section 161.001(1). She also contends the judgment must be reversed because there is no alternative dispute resolution statement in the Texas

---

1. Tidwell is also the mother of another child, Summer Jane Sprayberry. Summer lives with her father and is not a subject of these proceedings. At the time of trial, Elizabeth was pregnant with her seventh child. That child is also not a subject of these proceedings.

2. TEX.FAM.CODE ANN. § 161.001 (Vernon Supp. 2000) provides:

The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:

(1) that the parent has:

. . .

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

. . .

(O) failed to comply with the provisions of a court order that specifically establishes the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child. . . .

Department of Protective and Regulatory Services' (the Department's) petition. We find that the court's action is appropriate pursuant to Section 161.001(1), Subsections (D) and (E), and that the lack of an alternative dispute resolution statement in the petition is not fatal to the judgment.

Tidwell's children lived with her parents, Lidge and Sarah Tidwell, while Tidwell sometimes stayed there and at other times stayed at the homes of other relatives in the area. Tidwell's brothers, Lidge, Jr. and Erby, also lived at their parents' home. Lidge, Jr.'s wife and children also lived there.

The Department was contacted after Jennifer made an outcry of sexual abuse. There was evidence that Jennifer was sexually abused by her uncle, Andrew Blizzard, her fifteen-year-old cousin, Andy Blizzard, and her eleven-year-old brother, Clyde. The Blizzards lived near Lidge and Sarah Tidwell, where the children stayed. Clyde, along with Jennifer, Lewis, and Samantha, also lived there.

Tidwell signed a family service plan ordered by the district court after a hearing, in which she stated she would remove the children from the home and would not let Jennifer and Clyde be alone. However, two days later she contacted Child Protective Services worker Missy Ward and told her that she was returning the children to her parents' home, but had no plans to stay there herself, stating that "she was a young woman [and] she needed to go out." The Department then removed the children and placed them in foster homes.

█ In its petition the Department alleged that termination was proper under Section 161.001(1), Subsections (D), (E) and (O) of the Texas Family Code, and was in the children's best interest. The trial court agreed, stating in its order that termination was proper under each subsection and was in the children's best interest. Tidwell did not request findings of fact and conclusions of law.

█ Tidwell first challenges the legal and factual sufficiency of the evidence concerning the Department's allegations under Tex.Fam.Code Ann. § 161.001(1)(D) and (E). When findings of fact and conclusions of law are neither requested nor filed, we infer that the court made all findings necessary to support its judgment, and we will sustain the trial court's decision on any reasonable theory consistent with the evidence, the pleadings, and the applicable law. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). Where, as here, a reporter's record is available on appeal, the parties may challenge these implied findings by factual sufficiency and legal sufficiency points in the same way they may challenge jury findings or a trial court's findings of fact. *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989).

We review a legal sufficiency point of error by considering only the evidence and inferences that, when viewed in their most favorable light, tend to support the finding, and we disregard all evidence and inferences to the contrary. *Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 458 (Tex.1992). We uphold the fact finder's determination if any probative evidence supports it. *ACS Investors, Inc. v. McLaughlin,* 943 S.W.2d 426, 430 (Tex. 1997). In conducting a factual sufficiency review, we view all of the evidence and will sustain a factual sufficiency challenge only if we conclude that the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996).

█ The natural right between parents and their children is one of constitutional dimensions. *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Wiley v. Spratlan,* 543 S.W.2d 349, 352 (Tex.1976). In a termination case, the state seeks not merely to limit those rights but to end them finally and irrevocably—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for

the child's right to inherit. TEX.FAM.CODE ANN. § 161.206(b) (Vernon 1996); *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex.1985). For that reason, and because termination of parental rights is a drastic remedy, the evidence supporting a termination order must be clear and convincing. TEX.FAM. CODE ANN. § 161.206(a) (Vernon 1996); *In re G.M.,* 596 S.W.2d 846, 847 (Tex.1980). The clear and convincing standard is an intermediate standard, falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. It requires that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."[3] TEX.FAM.CODE ANN. § 101.007 (Vernon 1996); *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 31 (Tex.1994); *In re G.M.,* 596 S.W.2d at 847.

Section 161.001 of the Texas Family Code governs the involuntary termination of the parent-child relationship. Pursuant to that section, a court may order termination of the parent-child relationship if it finds by clear and convincing evidence one or more of the statutory grounds set out in Section 161.001(1) and determines that termination is in the best interest of the child as required by Section 161.001(2). TEX. FAM.CODE ANN. § 161.001 (Vernon Supp. 2000).

■ Section 161.001(1)(D) provides for termination where the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX.FAM.CODE ANN. § 161.001(1)(D). Section 161.001(1)(E) provides for termination where the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX.FAM.CODE ANN. § 161.001(1)(E). For purposes of Section 161.001(1)(D) and (E),

> "[E]ndanger" means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, [but] it is not necessary that the conduct be directed at the child or that the child actually suffers injury. Rather, "endanger" means to expose to loss or injury; to jeopardize.

*Texas Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex.1987) (citations omitted).

We find both legally and factually sufficient evidence to justify the trial court's action in terminating Tidwell's parental rights pursuant to Section 161.001(1)(D) and (E). There is evidence from Child Protective Services workers, psychologists, and Tidwell herself that her children lived with Tidwell's parents, mostly in Tidwell's absence, in a home near the residence of several other relatives of Tidwell's; that there were allegations of multiple acts of sexual abuse of Jennifer, age nine, and Clyde, age eleven, over a long period of time; and that the allegations had been brought to the attention of the Department and its officers. There was medical evidence that Jennifer had been sexually abused, in that she had no hymenal ring. The allegations of abuse of Jennifer were against her cousin, Andy, and her uncle, Andrew, who lived very near the children's grandparents. Evidence showed that the alleged abuse was not merely an isolated instance, but was a pattern. Jennifer described the sexual abuse against her to a Department worker in graphic terms. On one occasion Andrew and Andy tied Jennifer to a tree while they sexually attacked her. Tidwell knew her children visited the house where Andrew and Andy lived near-

---

**3.** In view of the clear and convincing evidence standard used at trial, Tidwell requests this Court to review her sufficiency contentions using a heightened standard of review. We rejected such an approach in *In re J.J.,* 911 S.W.2d 437, 439–40 (Tex.App.—Texarkana 1995, writ denied), and more recently in *In re King,* 15 S.W.3d 272, 275 (Tex.App.—Texarkana 2000, pet. denied).

ly "all the time," and that most of the visits were unsupervised. Tidwell once reported her father, Lidge Tidwell, for sexually abusing her and her sister in his home. It is unclear if Tidwell recanted the charges against her father. When asked if she had given a statement to police that her father did not sexually abuse her and her sister, she said, "No, we didn't have to, it didn't go nowheres. He got out the next morning." When asked again if she gave the police a statement, she said, "No, 'til now.'" Even if that answer can be considered a recantation, the trial court was entitled to resolve any conflict in Tidwell's testimony and believe that she had made the allegation and had not recanted. Tidwell's brother, Lidge, Jr., also lived in the home with the children. He too had been accused of sexually molesting the children, and Tidwell knew about those allegations.

There is evidence that Jennifer told her grandmother, whom she calls "Mom," about the sexual abuse by Andrew and Andy, but her grandmother did nothing but tell Jennifer not to do it anymore. Although Tidwell let her children live in their grandparents' home and knew they frequently visited their cousin and uncle nearby, Tidwell does not live in her parents' home herself except for brief periods. Tidwell is also planning to marry her boyfriend, Herbert Lambert, who in a revocation of probation for a burglary conviction was found to have committed indecency with his stepchildren and is under a court order not to visit them. At the time of the final hearing on termination, Tidwell was pregnant with Lambert's child.

Tidwell contends she was unaware of the sexual abuse history in the homes of her parents and the nearby relatives. She may have initially been unaware of the allegations, but after the court held an emergency hearing and ordered the family service plan, Tidwell was fully aware of the sexual abuse history. The family service plan signed by Tidwell was based on the history of sexual abuse in her parents' home and the nearby home of her uncle and cousin. The plan required Tidwell to protect the children from the sexual abuse, but she failed to do so and intentionally placed the children back in the same environment where the abuse occurred. The service plan also obligated Tidwell to attend parenting counseling sessions, but she did not do so. The Department found suitable housing for Tidwell and the children in Medina, Texas, near San Antonio, but Tidwell refused to take advantage of it. According to testimony by Dr. Robert Shore, a psychologist, Tidwell has an I.Q. below 99.9% of the population for her age and is unable to take care of the children by herself. Dr. Shore characterized Tidwell's condition as severe cognitive dysfunction.

Tidwell was aware of the actual sexual abuse, not just allegations, when she returned the children to their grandparents' home after signing the service plan, because Jennifer told Tidwell of the sexual abuse by Andy, and Tidwell took her to the doctor to confirm it.

Tidwell contends that, in addition to her awareness that there had been *allegations* of sexual abuse, there must be proof that the sexual abuse *actually occurred,* and there must be proof that she knew of the actuality before she left the children in her parents' home. We disagree.

Tidwell was aware there had been credible allegations of multiple sexual assaults by several of Jennifer's relatives who lived in the home with her or in a nearby house the children frequently visited without supervision. Moreover, she knew that the court had found that the place was dangerous to the children, and yet she returned them to that place and left them only two days after having been ordered to keep them away from the danger. Tidwell did have actual knowledge of the abuse when she returned the children to the home after signing the family service plan. Nevertheless, it is not necessary for Tidwell to have had certain knowledge that one of the offenses actually occurred; it is sufficient that she was aware of the potential for

danger to the children and disregarded the risk by breaking her agreement with the court and placing and leaving the children in that environment.

■ Tidwell also knew that her father, Lidge, with whom Jennifer lived, had sexually assaulted Tidwell and her sister in that home, and she knew that her fiancé, Herbert Lambert, had been found guilty of indecency with a child. We have held that it is not necessary for the sexual abuse occurring in a home to be directed against the child whose interest is in question for the home to be a dangerous place if there is known sexual abuse of other persons in that home. *See In re King*, 15 S.W.3d at 276–77. We find sufficient evidence to support the trial court's judgment.

In view of our disposition of the legal and factual sufficiency challenges, we need not discuss Tidwell's argument that Section 161.001(1)(O) is unconstitutional.

■ Section 102.0085(a) of the Texas Family Code provides that, except in certain cases not applicable here, in any suit affecting the parent-child relationship, the first pleading filed by the party shall include the following statement:

> "I am aware that it is the policy of the State of Texas to promote the amicable and nonjudicial settlement of disputes involving children and families. I am aware of alternative dispute resolution methods, including mediation. While I recognize that alternative dispute resolution is an alternative to and not a substitute for a trial and that this case may be tried if it is not settled, I represent to the court that I will attempt in good faith to resolve before final trial contested issues in this case by alternative dispute resolution without the necessity of court intervention."

TEX.FAM.CODE ANN. § 102.0085(a) (Vernon Supp.2000). This statement "must be prominently displayed in boldfaced type or capital letters or be underlined and be signed by the party." TEX.FAM.CODE ANN. § 102.0085(b) (Vernon Supp.2000). The record reveals that neither party's initial pleading contained the statutorily required statement.

Tidwell contends the omission constitutes reversible error. However, she did not object to the omission in the trial court, so she has failed to preserve this issue for review. TEX.R.APP.P. 33.1(a). She also fails to allege any harm resulting from the omission, and we can discern none. TEX.R.APP.P. 44.1.

For the reasons stated, we affirm the judgment.