COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 




 
 
  
 ARTURO ANTONIO TORRES AND DELFINA ESPINOSA,
  
                             Appellants,
  
 v.
  
 TEXAS DEPARTMENT
 OF PROTECTIVE AND REGULATORY SERVICES,
  
                             Appellee.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-01-00211-CV
  
 Appeal from the
  
 112th Judicial District Court
  
 of Crockett County, Texas
  
 (TC# 99-08-06220-CV)
 
 




 

 

O
P I N I O N

This is an appeal from an order
terminating the parental rights of Appellants, Arturo Antonio Torres and Delfina Espinosa. 
For the reasons stated, we affirm.

I.  SUMMARY OF THE EVIDENCE








This case is about two children,
M.L.T., age 8, and S.V., age 6.  Espinosa
is the mother of both girls and Torres is the father of M.L.T.  Torres and Espinosa were married for fifteen
years and divorced in 1998.  S.V.=s father, Juventino
Ramirez, did not participate in the underlying action and an interlocutory
order terminating his parental rights was entered by the trial court.  He is not a party to this appeal.  Espinosa has two other daughters, Jessica and
Severa, ages 18 and 16 respectively at the time of
trial.  They also have two different
fathers. 

Espinosa and Torres first became
involved with Appellee, the Texas Department of
Protective and Regulatory Services (Athe Department@) in 1986.  In August of that year, they were
investigated for hitting Jessica, then age four, and for locking her in a
closet.  A disposition of Areason to believe@ that abuse occurred was validated,
but the case was closed in 1987.  In
September of 1989, the Department received reports of physical abuse for
locking Jessica and Severa in a closet.  After an investigation, services were
offered.  In January, 1990, there was
another report of physical abuse--both girls were found locked in a closet, and
neither Espinosa nor Torres were home at the time.  The children were then removed from the home
and placed in foster care.  Espinosa
attended parenting classes and counseling services for almost one year, and the
children were reunified after ten months. 
The case was dismissed in December, 1990. 








In 1995, Children=s Protective Services (ACPS@) investigated Torres for abusing Severa.  A
disposition of Areason to believe@ and Afor physical abuse@ was validated.  In 1997, the Department investigated for
physical neglect of all four girls due to the unsafe and unsanitary living
conditions of the home, and a disposition of Areason to believe@ was entered with Espinosa and Torres
as perpetrators.  Later in 1997, Jessica
made an outcry of sexual abuse against Torres. 
In June of 1997, all four girls were removed from the home when abuse
and neglect were validated against both Torres, for attempting to have sexual
contact with Jessica, and Espinosa, for neglectful supervision.  Espinosa was offered intensive services, but
Torres refused to participate in services. 
After the removal, Espinosa filed for divorce. 

In October, 1997, M.L.T. and S.V.
were reunified with Espinosa on the condition that she not allow M.L.T. and
S.V. to be with Torres unsupervised, since he had been validated as a sexual
perpetrator.  Jessica and Severa were placed back in the home in December, 1997.  In March, 1998, the Department again
validated a claim against Espinosa for neglectful supervision.  Espinosa asked that Jessica and Severa be removed from her home because she could not
control them, she was afraid they would get hurt again, and she was afraid that
the older girls= actions would cause her to lose M.L.T. and S.V.  As to M.L.T. and S.V., the neglectful supervision
case was dismissed in May, 1998. 

In August 1999, the Department
received a report of neglectful supervision against Espinosa and Torres because
Espinosa was leaving M.L.T. and S.V. with Torres for unsupervised, overnight
visits in violation of her agreement with the Department.  The Department filed its Original Petition
for Protection of Children in an Emergency, for Conservatorship,
and for Termination in Suit Affecting the Parent-Child Relationship.  The girls were placed in foster care for ten
days.  After the allegations of
neglectful supervision were validated in September 1999, the girls were again
removed from Espinosa=s home and placed in foster care.  Espinosa again went to counseling and Torres
began, but did not complete, counseling sessions. 








Since October 1999, M.L.T. and S.V.
have been living with their foster parents, Robert and Ana Wilson.  The Wilsons
expressed their desire to adopt the girls if the parental rights were terminated.  While in foster care, M.L.T. and S.V. both
reported that Torres and Espinosa touched them in inappropriate sexual manners,
that Espinosa neglected them, and that Espinosa used drugs.  M.L.T. disclosed to her therapist that Torres
would Atouch her privates@ both while she was clothed and while
they bathed together.  On an anatomical
doll, M.L.T. indicated that Torres had touched her rectum and vagina, but that
there was no penetration.  She also
expressed concerns that Torres may have touched S.V.  S.V. told the therapist that when she and
M.L.T. were visiting Torres, M.L.T. Awould get into the bathtub with her,
would have her lay down and that [M.L.T.] would lie on top of her and rub up
and down.@ 
S.V. related that Torres was in the bathroom when this occurred and that
while Ahe did not touch his privates,@ he did make Afunny noises with his mouth.@ 
The Department validated the claims of sexual abuse by Torres in August
2000. 








A jury trial was held January 8-12,
2001.  The Department alleged that
Espinosa 1) endangered her children by knowingly placing or allowing the
children to remain in conditions or surroundings which endanger the physical or
emotional well-being of the children or 2) engaged in conduct or knowingly
placed the children with persons who engaged in conduct which endangers the
physical or emotional well-being of the children, and that Torres endangered
M.L.T. by either 1) knowingly placing or allowing the child to remain in
conditions or surroundings which endangers the physical or emotional well-being
of the child or 2) engaged in conduct or knowingly placed the child with
persons who engaged in conduct which endangers the physical or emotional
well-being of the child.  The Department
also argued that termination was in the best interest of the children.  The jury agreed and terminated the parental
rights of Espinosa and Torres.  The trial
court entered its Final Decree Terminating Parental Rights on January 24,
2001.  This appeal follows. 

II.  DISCUSSION

Both Espinosa and Torres challenge
the legal and factual sufficiency of the evidence to establish that they either
1) knowingly placed or allowed the children to remain in conditions or
surroundings which endangered the physical or emotional well-being of the
children or 2) engaged in conduct or knowingly placed the children with persons
who engaged in conduct which endangered the physical or emotional well-being of
the children.  In addition, Espinosa
challenges the legal and factual sufficiency of the evidence to establish that
termination is in the best interest of the children. 

The natural right that exists between
parents and their children is one of constitutional dimension.  Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); Clark v. Dearen, 715 S.W.2d 364, 366 (Tex. App.--Houston [1st
Dist.] 1986, no writ).  For this reason,
statutes authorizing involuntary termination are construed in favor of the
parent and any effort by the State to terminate the relationship is strictly
scrutinized.  Holick
v. Smith, 685 S.W.2d 18, 20 (Tex. 1985); Ybarra v. Texas Dep=t of Human Servs, 869 S.W.2d 574, 576 (Tex.
App.--Corpus Christi 1993, no writ); Clark, 715 S.W.2d at 368.  The Texas Family Code sets forth the statutory
grounds upon which the court may involuntarily terminate a parent‑child
relationship.  Tex. Fam. Code Ann. '  161.001 (Vernon Supp.
2002).  Relevant to this appeal, Section
161.001 allows termination if the parent has: 

(D) knowingly placed or knowingly allowed the child to
remain in conditions or surroundings which endanger the physical or emotional
well-being of the child;

 

(E) engaged in conduct or knowingly placed the child
with persons who engaged in conduct which endangers the physical or emotional
well-being of the child.

 

Tex. Fam. Code Ann. ' 161.001(1)(D), (E). 

In addition
to establishing one or more of the grounds under Section 161.001(1), the
petitioner must establish that termination is in the best interest of the
child.  Tex.
Fam. Code Ann. ' 161.001(2) (Vernon Supp. 2002).  Each of the above elements must be
established by clear and convincing evidence. 
Tex. Fam. Code Ann. ' 161.001; see Holick,
685 S.W.2d at 20; In the Interest of B.R., 950 S.W.2d 113, 117 (Tex.
App.--El Paso 1997, no writ).  AClear and convincing evidence@ means the measure or degree of proof
that will produce in the mind of the trier of fact a
firm belief or conviction as to the truth of the allegations sought to be
established.  Tex. Fam. Code Ann. ' 101.007 (Vernon 1996); In the
Interest of B.R., 950 S.W.2d at 117. 
It is an intermediate standard of proof, falling between the
preponderance standard of ordinary civil proceedings and the reasonable doubt
standard of criminal proceedings.  In
the Interest of B.R., 950 S.W.2d at 117. 
In this case, the jury found the evidence sufficient on both of the
alleged grounds.  Therefore, we will
affirm if legally and factually sufficient evidence supports either of those
two grounds and the finding is in the best interest of the children.  Doyle v. Texas Dep=t of Protective and Regulatory Servs, 16 S.W.3d 390, 394 (Tex. App.--El Paso 2000, pet. denied).

A.  Standard of Review

In conducting
a factual sufficiency review where the burden of proof at trial was by clear
and convincing evidence, we apply a heightened standard of review.[1]  Hann v.
Texas Dep=t of Protective and Regulatory Servs, 969 S.W.2d 77, 81 (Tex. App.--El Paso 1998, writ denied) (citing In
the Interest of B.R., 950 S.W.2d 118‑19)).  After considering all of the evidence, we
must determine whether the trier of fact could
reasonably conclude that the existence of a fact was highly probable.  In the Interest of B.R., 950 S.W.2d at
119.  Under this standard, we must
consider whether the evidence was sufficient to produce in the mind of the fact
finder a firm belief or conviction as to the truth of the allegations sought to
be established.  We will sustain an
insufficient evidence point of error only if the fact finder could not have
reasonably found the fact was established by clear and convincing
evidence.  In the Interest of B.R.,
950 S.W.2d at 119 (citations omitted).  AEven applying the heightened standard
of review which we have adopted, a factual sufficiency point requires us to
examine all of the evidence in determining whether the finding in question is
so against the great weight and preponderance of the evidence as to be
manifestly unjust.@  Hann,
969 S.W.2d at 82.








Although we
use a heightened standard of review for factual sufficiency challenges, we use
the traditional standard of review for legal sufficiency challenges.  See Edwards v. Texas Dep=t of Protective and Regulatory Servs, 946 S.W.2d 130, 137 (Tex. App.‑‑El Paso 1997, no
writ).  An appellate court considers only
the evidence which tends to support the jury=s findings and disregards all
evidence and inferences to the contrary. 
Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965); Worsham Steel Co. v. Arias,
831 S.W.2d 81, 83 (Tex. App.‑‑El Paso 1992, no writ).  If any probative evidence supports the jury=s determination, it must be
upheld.  In re King=s Estate, 150 Tex. 662, 244 S.W.2d 660, 661‑62
(1951); Neily v. Aaron, 724 S.W.2d 908,
913 (Tex. App.‑‑Fort Worth 1987, no writ). 

Section 161.001(D) & (E)    

For purposes
of Section 161.001(1)(D) and (E), Aendanger@ means to expose to loss or injury or
to jeopardize a child=s emotional or physical health.  Texas Dep=t of Human Servs  v. Boyd, 727 S.W.2d 531, 533 (Tex.1987); Hann v. Texas Dep=t of Protective and Regulatory Servs, 969 S.W.2d 77, 82 (Tex. App.--El Paso 1998, writ denied); Edwards,
946 S.W.2d at 138.  While Aendanger@ means more than a threat of
metaphysical injury or the possible ill effects of a less-than-ideal family
environment, it is not necessary that the conduct be directed at the child or
that the child actually suffers injury.  Boyd,
727 S.W.2d at 533.

1. 
Environmental Endangerment








            Section
161.001(1)(D) requires a showing that the environment in which the child is
placed endangered the child=s physical or emotional well-being.  Hann, 969
S.W.2d at 82; In the Interest of H.C. and S.C., 942 S.W.2d 661, 664
(Tex. App.--San Antonio 1997, no writ). This provision addresses the child=s surroundings and environment rather
than parental misconduct, which is the subject of Section 161.001(1)(E).  See Ybarra, 869 S.W.2d at 577.           The record reflects that Espinosa
left M.L.T. and S.V. with Torres for unsupervised, overnight visits in
violation of her agreement with the Department. 
Torres admitted that M.L.T. and S.V. slept in his room with him at his
parents= house despite the Department=s rules that forbade him to be alone
with the girls.  The record further
reflects that Espinosa knew of M.L.T.=s statements that Torres had touched
her in an inappropriate sexual manner and testified that she believed her.  Espinosa told her psychologist that she
believed her daughter, but that she also tended to believe Torres because he
told her he did not do it and because Ahis parents had told her that he
probably wouldn=t do something like that.@ 
After an investigation, the Department determined that the children were
at risk of sexual abuse because they were present for extended periods of time
in the Torres home. 

Jessica,
M.L.T., and S.V. have all claimed that he sexually abused them.  Espinosa testified that she no longer
believed that Torres molested Jessica Abecause what Jessica told me, she didn=t mention that he touched her or anything.@ 
She stated that Torres only Atried to@ touch Jessica.  M.L.T. disclosed to her therapist that Torres
would Atouch her privates@ both while she was clothed and while
they bathed together, and expressed concerns that Torres may have touched
S.V.  M.L.T. exhibited what her therapist
called Asexualized behavior@ when she would get into the bathtub
with S.V., have her lie down and rub up and down on top of her while Torres
watched.  As previously noted, the
Department validated the claims of sexual abuse by Torres in August 2000. 








Torres first
testified that he was alone with both girls during the times they stayed at his
parents= home.  Later, he stated that his parents were
present at all times.  He denied taking a
bath with them or watching them bathe. 
While he admitted that M.L.T. and S.V. slept in his room with him, he
denied that they slept together.  He
testified that the girls slept in his bed and that he slept on a sofa in the
same room.  Torres also denied touching
M.L.T., asking her to touch him, and asking her to touch S.V.  

It
is beyond question that sexual abuse is conduct that endangers a child=s physical or emotional well-being.  In re King, 15 S.W.3d 272, 276 (Tex.
App.--Texarkana 2000, pet. denied). 
Parental knowledge that an actual offense has occurred is not necessary;
it is sufficient that the parent was aware of the potential for danger and
disregarded that risk.  In re Tidwell,
35 S.W.3d 115, 119-20 (Tex. App.--Texarkana 2000, no pet.).  A parent=s
refusal to leave a situation that exposes a child to the risk of sexual abuse
is grounds for the termination of parental rights.  See In re J.M.C.A., 31 S.W.3d 692, 698
(Tex. App.--Houston [1st Dist.] 2000, no pet.).

Having
considered only the evidence and inferences tending to support the dispositive findings and disregarding all evidence and
inferences to the contrary, we conclude there is more than a scintilla of
evidence supporting the jury=s findings.  We
further conclude, based on all the evidence, that the evidence is sufficient to
produce in the mind of the trier of fact a firm
belief or conviction as to the truth of the allegations that Espinosa knowingly
placed or knowingly allowed M.L.T. and S.V. to remain in conditions or
surroundings which endangered their physical and emotional well-being.  Espinosa=s Issue
No. One is overruled. 

Likewise,
we conclude the evidence is legally and factually sufficient to support the
jury=s finding that Torres knowingly placed or knowingly
allowed M.L.T. to remain in conditions or surroundings which endangered her
physical and emotional well-being. 
Torres= Issue No. One is overruled.  Because Torres does not challenge the trial
court=s finding that termination was in the best interest of
the child, we affirm the judgment of the trial court as to him.

2.
Best Interests of the Children

 

In her second
issue, Espinosa challenges the legal and factual sufficiency of the evidence to
establish that termination is in the best interests of the children.  In deciding whether the evidence is
sufficient to support the court=s ruling that termination would be in the children=s best interest, we apply the
non-exclusive factors found in Holley v. Adams, 544 S.W.2d 367
(Tex. 1976).[2]  This Court has recognized that the Abest interest@ standard is not an exclusive,
bright-line test and instead is a matter of a careful, subjective weighing of
the evidence: 

The holding in Holley recognizes that >best interest= does
not require proof of a unique set of factors nor does it limit the universe of
such factors.  It is also implicit that
underlying each factor and, other pertinent, case specific factors, their
temporal locus is a matter of importance because, as events in time, they stand
in causal relationship with other events. 
So too, it must be recognized that the issue of best interest of the
child is necessarily infused with the statutory offensive behavior.  Consequently, there will be cases where the
offending behavior is so pernicious that it demands termination of parental
rights and the Department will prevail with relative ease, but also those cases
where the best interest determination must have a firm basis in facts standing
apart from offending behavior.  While the
bad acts or omissions might reasonably suggest that a child would be better off
with a new family, the evidence may still be insufficient to satisfy the clear
and convincing standard.  The best
interest standard does not permit parental termination merely because a child
might be better off living elsewhere. 
Otherwise, the termination statute might be used for a massive
reallocation of children to better and more prosperous parents.

 








In the Interest of C.H., 25 S.W.3d
38, 52-53 (Tex. App.--El Paso 2000, pet. granted). The Holley test
focuses on the best interest of the child, not the best interest of the parent.
Dupree v. Texas Dep't of Protective and Regulatory Servs,
907 S.W.2d 81, 86 (Tex. App.--Dallas 1995, no writ); D.O. v. Texas Dep't of
Human Servs, 851 S.W.2d 351, 358 (Tex.
App.--Austin 1993, no writ).

There is
substantial evidence favorable to the jury=s finding that termination is in the
best interest of the children.  Espinosa
and Torres both have a history of criminal activity and illegal drug use.[3]  Three weeks prior to the underlying trial,
Espinosa was charged with possession of a controlled substance with the intent
to deliver after the sheriff of Crockett County found narcotics in her
home.  Espinosa admitted to possessing
cocaine.  This arrest could lead to the
revocation of her probation and a sentence of six years in state jail.  Espinosa admitted to her counselor that on the
occasions she left M.L.T. and S.V. with Torres, drugs were more important than
the care of her children.  The counselor
testified that Espinosa Aacknowledged many times she had chose [sic] her drugs over
the welfare of her children.@ When asked what she would do differently in parenting M.L.T
and S.V. from the way she parented Jessica and Severa,
Espinosa responded, AI can=t think of anything right now.@ 









Torres has a
criminal history of drug abuse, drug trafficking, and property crimes.  Most recently, he tested positive for
marijuana and cocaine, which was a violation of his probation for a charge of
receiving stolen property.  He was placed
in the Court Residential Treatment Center in San Angelo in January of 1999 and
was released in May of 1999.  He was
released from probation unsuccessfully in November 2000, despite being
delinquent in paying $5,130.00 in restitution. 
Most importantly, the Department validated the claims of sexual abuse by
Torres in August 2000. 

There is
substantial evidence that M.L.T. and S.V. have bonded with their foster family
and that both girls have made great strides in therapy.  The guardian ad litem
reported that M.L.T. and S.V. have responded to the Aquality nurturing@ they have received and that the Wilsons have provided a Aconsistently secure and structured
environment.@ 
Their counselor testified that the prognosis for the M.L.T. and S.V. in
their new environment was Avery hopeful.@  She expressed concern
that if the girls were returned to a neglectful, chaotic environment, the
improved sense of trust, security, communication, healthy family functioning,
and the improved boundaries would all be jeopardized.  M.L.T. and S.V. both indicated that they
wished to stay with the Wilsons. 

Next, we view
all evidence to determine whether the jury reasonably found by clear and
convincing evidence that the termination was in the best interest of M.L.T. and
S.V.  We appraise all legally material
evidence under the appellate standard for factual sufficiency review, especially
minding that the ultimate goal in this case is to serve the best interest of
the child in dispute and without a moral evaluation of the parent's fitness or
conduct.  In re C.H., 25 S.W.3d at
53.








Espinosa
argues that she has made numerous attempts to regain custody of M.L.T. and
S.V.  She testified that she would
arrange for day care at the community center if the children were returned to
her.  She stated that she had done
extensive repairs to the home, such as painting and installing carpet, and that
the girls would have their own bedrooms. 
She testified that she took parenting classes and went to
counseling.  Espinosa stated that she had
never done drugs in front of the children and that she had been clean for a
year and a half.  Espinosa testified that
she could provide a loving home for M.L.T. and S.V. and that she felt her life
was back in order. 








Espinosa
relies on the testimony of several witnesses as well.  She cites the testimony of M.L.T.=s Head Start teacher that the girls
were always Areal clean.@ 
Espinosa also cites the testimony of her counselor that she regularly
went to therapy and had progressed Ato some degree.@ 
Likewise, Espinosa relies on the testimony of Linda Scalf,
a Child Protective Services Specialist for the Department.  Scalf testified
that after the removal of the children in 1997, it appeared that Espinosa was
fixing up the home.  Scalf
stated that the home had electricity, running water, and indoor plumbing.  Finally, Espinosa cites the testimony of Y.
D. Garcia, the CPS-referred counselor. 
Garcia testified that she did not believe she ever stated that
termination was in the children=s best interest, but that she did have strong reservations
about their returning home into an environment where there had not been any improvement.
 

A paramount
consideration is that a child should have permanence, stability, and continuity
for the child=s physical and emotional health, and
establishing a stable, permanent home for a child is a government=s compelling interest.  Dupree,907 S.W.2d at 87.  We cannot say that the evidence supporting
termination in this case is so weak and the contrary evidence so overwhelming
as to make the decision wrong and unjust. 
Moreover, the evidence also showed that these children apparently are
doing well in foster care and have a very good chance of being adopted.  Viewing all the evidence, we hold that there
is factually sufficient evidence to support the finding that termination of
Espinosa=s parental rights is in the children=s best interest.  Espinosa=s Issue No. Two is overruled.

We conclude
that the evidence is legally and factually sufficient to support the jury=s verdict under Section
161.001(1)(D).  Consequently, we need not
address whether termination was proper under Section 161.001(1)(E).  Moreover, we find that termination was in the
best interest of S.V. and M.L.T. 
Accordingly, we affirm the judgment of the trial court.        

July 19, 2002

 

 

 

                                                                                                  RICHARD BARAJAS, Chief Justice

 

Before Panel No. 4

Barajas, C.J., Larsen, and McClure, JJ.

 

(Do Not Publish)       











[1]
The Department urges this Court to abandon the
intermediate standard of review in termination cases, arguing that it usurps
the role of the finder of fact, that it blurs the distinction between legal and
factual sufficiency review and leads to anomalous results, and that it
conflicts with decisions of nine courts of appeal and the Texas Supreme Court. 





[2] These factors
include (1) the desires of the child; (2) the present and future emotional and
physical needs of the child; (3) the present and future emotional and physical
danger to the child; (4) the parenting abilities of the individuals seeking
custody; (5) the programs available to assist these individuals to promote the
best interests of the child; (6) the plans for the child by these individuals
or by the agency seeking custody; (7) the stability of the home or proposed
placement; (8) the acts or omissions of the parent that may indicate the
existing parent-child relationship is not a proper one; and (9) any excuse for
the acts or omissions of the parent.  Holley,
544 S.W.2d at 371-72.



 





[3]
Examination of Torres= history is relevant because despite Espinosa=s knowledge of his crimes and drug use, she continued
to leave her children with him for unsupervised overnight visits.