

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00260-CV

IN THE INTEREST OF T.S., R.S., I.S., AND S.S., CHILDREN

On Appeal from the 181st District Court
Randall County, Texas
Trial Court No. 72,959-B, Honorable Jack M. Graham, Presiding

December 5, 2019

MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Mother appeals the trial court's termination of the parent-child relationship between her and her four children, T.S., R.S., I.S., and S.S. On appeal, she challenges the sufficiency of the evidence, the trial court's admission of testimony over her hearsay objection, and the trial court's failure to file findings of fact and conclusions of law. We affirm.

*Background*

The relationship between the biological mother and father of these four children involved years of physical abuse by the father. He admitted to having hit Mother several

times in the presence of the children. Father also had an ongoing methamphetamine addiction. Mother did not use drugs.

After Mother and Father separated due to Father's conduct, Mother began a relationship with Houston.[1] This relationship involved Houston engaging in physical abuse directed at the children and drug use, as well. Mother and the Department knew that Houston regularly used marijuana. In connection with earlier Department involvement, the Department advised Mother to refrain from allowing the children to be left in Houston's care. Mother disregarded that advice. Furthermore, Houston undertook disciplining the children regularly. The discipline was excessive, and Mother noted that the children suffered pain longer than what should be expected after spankings from Houston. Mother directed him to discontinue his physical discipline of the children. Mother noted the bruises but, despite already noting the severity of the "spankings," attributed the bruises to ordinary childhood play and such. Though she did acknowledge at trial that Houston abused the children, her initial reactions were marked by denial. Photographs of the bruising were made part of the record.

During one incident shortly after Mother's directive to stop spankings, in late December 2017, Houston pushed three-year-old I.S. into a wall and caused injury to his face.[2] This incident precipitated CPS to become involved with the family again and led to the children's removal. Mother believed this to be an accident and, even when

---

[1] Father had spent some time in drug rehabilitation facilities in both Texas and Colorado. Following his return to Amarillo and at the time of the instant hearing, he was incarcerated on pending charges of assault–family violence against Mother and of violation of a protective order by contacting Mother. Father testified at the hearing and, although his parental rights were also terminated at this time, he has not appealed that judgment.

[2] The Department introduced evidence that, as a result of this contact, Houston had been indicted for injury to child at the time of the hearing.

confronted with statements to the contrary from the Department, did not acknowledge Houston's abuse. She, instead, continued to characterize him as a good person and continued the relationship. Eventually, the relationship ended after the children were removed.

Mother also occasionally left the children in the care of a friend whose home was filthy and posed serious physical dangers to the children. When the investigator visited the babysitter's home, she observed the children dirty and disheveled laying under a blanket covered in piles of dog feces. Garbage, lighters, gas can, cleaning supplies, boards, and knives were strewn about the home and within the children's reach. Mother maintains that she was unaware of these conditions because she had never gone to that home; the babysitter would pick the children up at Mother's home.

The trial court found that Mother knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children and engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E) (West Supp. 2019). It also found that termination of the parent-child relationship was in the best interest of the children. *See id.* § 161.001(b)(2). Mother has perfected the appeal.

Mother presents four issues for this court's review. She maintains that the trial court erred by failing to file findings of fact and conclusions of law. She also contends that the trial court abused its discretion when it admitted over hearsay objection a CPS investigator's statement regarding the report by the eldest child that Mother left the children alone. She also challenges the sufficiency of the evidence to support the trial

3

court's finding of the predicate grounds for termination and of the trial court's finding that termination of the parent-child relationship was in the children's best interests.

*Issues Three and Four - Sufficiency of the Evidence*

We first address Mother's sufficiency arguments, presented as her third and fourth issues. We do so because they would provide her the greatest relief if sustained. *See In re K.W.*, 138 S.W.3d 420, 428 (Tex. App.—Fort Worth 2004, pet. denied) ("When a party presents multiple grounds for reversal of a judgment on appeal, the appellate court should first address those points or issues that would afford the party the greatest relief."). We overrule both issues.

The Texas Family Code allows a court to terminate the relationship between a parent and a child if the party seeking termination establishes (1) one or more acts or omissions enumerated under § 161.001(b)(1) and (2) termination of that relationship is in the child's best interest. *In re K.M.*, No. 07-19-00073-CV, 2019 Tex. App. LEXIS 4178, at *1 (Tex. App.—Amarillo May 21, 2019, pet. denied) (mem. op.); *see* TEX. FAM. CODE ANN. § 161.001(b)(1)-(2). Both elements must be established by "clear and convincing evidence." *See In re K.M.*, 2019 Tex. App. LEXIS 4178, at *1. That standard is met when the evidence of record "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* In reviewing whether the evidence is sufficient to do that, we apply the tests described in *In re K.M.L.*, 443 S.W.3d 101, 112–13 (Tex. 2014), and *In re K.V.*, No. 07-16-00188-CV, 2016 Tex. App. LEXIS 11091, at *6–8 (Tex. App—Amarillo Oct. 11, 2016, no pet.) (mem. op.). And, in applying

4

those tests to the finding of best interest, we compare the evidentiary record to the factors itemized in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976).[3]

Section 161.001(b)(1)(D) permits termination when clear and convincing evidence shows that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). It requires a showing that the child's environment posed a danger to the child's physical or emotional health, and it permits termination based on a single act or omission by the parent. *In re M.M.*, No. 07-19-00105-CV, 2019 Tex. App. LEXIS 7505, at *7 (Tex. App.—Amarillo Aug. 21, 2019, pet. denied) (mem. op.). Though the subsection concerns the child's living environment, a parent's conduct may be considered since it may create an environment endangering the child. *Id.* at *8.

Under subsection (E), the relevant inquiry is whether there exists evidence illustrating that the endangerment of the child's well-being was the direct result of the parent's conduct, which conduct includes her acts and omissions. *Id.* Termination under subsection (E) must be based on more than a single act or omission but rather on a voluntary, deliberate, and conscious course of conduct by the parent. *Id.* at *8–9.

---

[3] The *Holley* factors are as follows: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parenting abilities of the parent seeking custody; (5) the programs available to assist the parent; (6) the plans for the child by the parties seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions committed by the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions committed by the parent. *Holley*, 544 S.W.2d at 372. Furthermore, the evidence need not establish that all the *Holley* factors support the conclusion that termination is in the child's best interest, and the absence of evidence of some factors does not preclude the fact-finder from reasonably forming a strong conviction that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

*Subsections (D) and (E)*[4]

By permitting Houston into the home and allowing him to remain after being made aware that he was using excessive force against the children, Mother created an environment that posed a danger to the children. Her failure to protect the children not only subjected them to the immediate physical threat Houston posed but also left the children vulnerable in a more general sense to the impact of having been abused. *See In re L.C.*, 145 S.W.3d 790, 797–98 (Tex. App.—Texarkana 2004, no pet.) (finding sufficient evidence under subsection (E) when mother knew of abuse allegations but failed to adequately protect her children, noting that "[w]ithout the protection of their mother, the children may suffer continued abuse and may feel less inclined to report any abuse").

Again, though Mother maintains she was unaware of Houston's abuse, the factfinder could reasonably deem her position disingenuous; the record contains evidence indicating she was well aware of the risk prior to the December 2017 incident necessitating the children's removal. She advised Houston that he should no longer spank the children days prior to the incident in which he shoved I.S. into a wall and injured his face. Even if she remained uncertain as to whether Houston intentionally caused the injury to I.S.'s face and the bruises on the children, it is sufficient that she was aware of the potential for abuse of the children and disregarded that risk. *See In re Tidwell*, 35 S.W.3d 115, 119–20 (Tex. App.—Texarkana 2000, no pet.)

---

[4] As we have noted, there are specific considerations as to subsections (D) and (E), but we note that endangerment of the child's physical or emotional well-being is an element of both subsections (D) and (E). *See In re N.K.*, 399 S.W.3d 322, 329–30 (Tex. App.—Amarillo 2013, no pet.). Because evidence concerning subsections (D)'s and (E)'s statutory grounds for termination is interrelated, we will consolidate our review of the evidence supporting these grounds and note, when and if necessary, any relevant distinctions to be drawn. *See id.*

With regard to the abuse in the marriage, it too endangered the children. *See In re I.G.*, 383 S.W.3d 763, 770 (Tex. App.—Amarillo 2012, no pet.); *see also In re A.R.E.*, No. 14-19-00437-CV, 2019 Tex. App. LEXIS 9685, at *17 (Tex. App.—Houston [14th Dist.] Nov. 5, 2019, no pet. h.) (mem. op.) ("Violent conduct by a parent toward the other parent may produce an environment that endangers the physical or emotional well-being of a child."). Further, a parent's failure to remove herself and her children from a violent relationship endangers the physical or emotional well-being of the children. *See In re I.G.*, 383 S.W.3d at 770.

From her failure to protect the children from Houston's abuse and her pattern of remaining in abusive relationships without regard to the impact that the abuse had on the children, we conclude that the evidence was legally and factually sufficient for the factfinder to form a firm conviction and belief that Mother placed the children in conditions and engaged in conduct which endangered their physical and emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E).

*Best Interest*

For many of the same reasons, we conclude that the *Holley* factors weigh in favor of the trial court's finding that termination of the parent-child relationship is in the children's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). For years, the children had been exposed to drug use and physical abuse. Indeed, continued exposure to domestic violence and drug abuse are circumstances supporting a determination that termination of the parent-child relationship is in the child's best interest. *See In re K.M.*, 2019 Tex. App. LEXIS 4178, at *5; *In re M.R.*, 243 S.W.3d 807, 820 (Tex. App.—Fort Worth 2007, no pet.).

7

Additionally, a parent's failure to protect his child weighs in favor of the finding that termination is in the child's best interest.  *See In re A.J.H.*, No. 01-18-00245-CV, 2019 Tex. App. LEXIS 223, at *36 (Tex. App.—Houston [1st Dist.] Jan. 15, 2019, no pet.) (mem. op.).  Mother permitted Houston into the family home when she knew he regularly used drugs.  Though she claims that she was unaware of his abuse, the record belies her claims.  Even prior to the children's removal, she knew that his discipline was excessive when she directed him to refrain from spanking them.  In the interim, she employed half measures and also, for months after the children's removal, insisted that Houston was a good person, "a gentle giant."  *See Spurck v. Tex. Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 223 (Tex. App.—Austin 2013, no pet.) (noting that the fact-finder could have reasonably inferred that parent's past failure to protect child from emotional and physical danger may suggest likelihood of same failure in the future).  Her denial of Houston's abuse and his character and her consequential failure to protect the children reveals she lacked a fundamental understanding of her role as a parent.

Since their removal, the children underwent therapy due to their fears.  At the time of trial, they lived with relatives who have provided them stability, proper care, and a loving home environment.  These relatives also have expressed the desire to adopt the four children, meaning they can continue to thrive amongst family and with the companionship of all their siblings.

Based on the record before us, the factfinder could have formed a firm conviction and belief that termination of the parent-child relationship was in the best interest of the children.

*Issue One - Failure to File Findings and Conclusions*

Mother complains of the trial court's failure to file findings of fact and conclusions of law. We overrule the issue.

Mother requested findings of fact and conclusions of law on July 10, 2019, but did not file a notice of past due findings. Per our rules of civil procedure,

> If the court fails to file timely findings of fact and conclusions of law, the party making the request shall, within thirty days after filing the original request, file with the clerk and serve on all other parties in accordance with Rule 21a a "Notice of Past Due Findings of Fact and Conclusions of Law"

TEX. R. CIV. P. 297. The failure to file a notice of past due findings of fact forfeits the right to complain about the trial court's failure to file findings of fact and conclusions of law. *See Las Vegas Pecan & Cattle Co. v. Zavala Cty.*, 682 S.W.2d 254, 255 (Tex. 1984). No such notice appears in the record of this case, and error has not been preserved.

Furthermore, the ultimate issues of fact were stated in the trial court's judgment. They consisted of the statutory grounds upon which the trial court relied for terminating the parental relationship and the finding of best interests. Since findings of fact need only encompass ultimate facts, *see In re M.O.*, No. 06-19-00004-CV, 2019 Tex. App. LEXIS 5038, at *13 (Tex. App.—Texarkana June 19, 2019, no pet.) (mem. op.), and the ultimate facts were mentioned in the termination order, it cannot be said that Mother was harmed by the failure to separately issue findings of fact and conclusions of law. Indeed, the 72-page brief filed by Mother tends to negate the suggestion that she "cannot properly prepare her case" to the appellate court.

*Issue Two - Admission of Investigator's Testimony*

Mother contends that the trial court abused its discretion when it admitted over her objection testimony from the investigator that the eldest child, T.S., reported to the

investigator that Mother and Houston left the children alone in the home. Despite this objection a DVD recording of T.S.'s interview at The Bridge was admitted into evidence by agreement. Per the parties' stipulation, the trial court agreed to watch and consider the recorded interviews prior to issuing its ruling. We too have viewed T.S.'s interview and note that, in that interview, she explained how Mother and Houston wanted to have a date and left her to watch the other children. T.S. explained that, while she was watching the children, one of her little brothers got into the fish food and ate it. She explained that it was supposed to be a quick trip, but it was longer than that. She also indicated that this happened on more than one occasion. Because the same or similar evidence was admitted without objection, any error in overruling the hearsay objection was cured or rendered harmless. *See In re J.M.*, No. 07-13-0011-CV, 2013 Tex. App. LEXIS 4547, at *5–6 (Tex. App.—Amarillo Apr. 9, 2013, no pet.) (mem. op.). We overrule Mother's second issue.

Having overruled Mother's four issues, we affirm the trial court's judgment terminating the parent-child relationships.


Per Curiam