**Robin HANN, Appellant,**

v.

**TEXAS DEPARTMENT OF PROTECTIVE AND REGULATORY SERVICES, Appellee.**

No. 08–97–00057–CV.

Court of Appeals of Texas, El Paso.

April 9, 1998.

Rehearing Overruled June 17, 1998.

Judy Sanders Garcia, El Paso, for Appellant.

Jose R. Rodriquez, County Attorney, Karmen Binka, Assistant County Attorney, Clinton Cross, Assistant Attorney General, El Paso, for Appellee.

Eduardo Gamboa, El Paso, for Interested Party.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

1. The petition also sought to terminate the parent-child relationship between Andrew G. Hann, the father, and C.H. Andrew G. Hann does not appeal.

## OPINION

LARSEN, Justice.

This appeal stems from a judgment terminating the parental rights of Robin Hann, the mother of C.H.

### SUMMARY OF THE EVIDENCE

#### Procedural History

On March 31, 1994, C.H. was removed from her mother's care. Shortly thereafter, the Texas Department of Protective and Regulatory Services (TDPRS) instituted proceedings to terminate the parent-child relationship between Robin S. Hann and her child.[1] TDPRS sought to terminate Robin Hann's parental rights pursuant to Section 161.001(1)(D), (E), (F), and (I) and Section 161.001(2) of the Family Code. These sections of the Family Code provide:

> The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:
>
> (1) that the parent has:
>
> . . .
>
> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;
>
> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
>
> (F) failed to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of the petition;
>
> . . .
>
> (I) contumaciously refused to submit to a reasonable and lawful order of a court under Chapter 264; . . . and
>
> . . .
>
> (2) that termination is in the best interest of the child.[2]

2. Tex. Fam.Code Ann. § 161.001 (Vernon 1996 & Supp.1998).

The termination proceedings were tried over an extended period of time. The initial non-jury trial began on March 15, 1996. On March 29, 1996, the trial was continued for ninety (90) days when the parties involved agreed to a Treatment and Gradual Reunification Plan between the mother and child. This treatment plan required Robin Hann to meet many TDPRS recommendations. If Robin Hann fully complied with these recommendations, the termination proceedings would be dismissed. Yet, TDPRS reserved the right to proceed with the termination proceedings if Robin Hann was unable to fully comply with the reunification plan. Robin Hann complied with most of the recommendations; however, she failed to maintain stable full-time employment during these ninety (90) days. Apparently, she was fired from her job for failing to get a food handler's license. Within two weeks of losing her job, she found two new part-time jobs. As a result of her non-compliance with this recommendation, TDPRS reinstituted the termination proceedings on August 23, 1996. On October 8, 1996, the trial court found that the parental rights of Robin Hann with respect to C.H. should be terminated. In four points of error, Robin Hann appeals the decision terminating her parental rights.

## FACTUAL HISTORY

On March 31, 1994, Antonio Montoya, an investigator with the Child Protective Services Division of the Texas Department of Protective and Regulatory Services, responded to an anonymous phone call that indicated that a child was left by her mother in an apartment building. When he arrived, Mr. Montoya noticed that the two people that were supervising the child had visible open sores on their bodies. They later admitted that they were cocaine abusers.

Mr. Montoya entered a very dark, foul smelling apartment looking for C.H. He found her in an even darker bedroom lying next to another person. His perception was that the child was in fear when he saw her. He described the child's appearance as physically dirty and fearful. When he asked the child about bruises on her body, she stated that Bill, her mother's boyfriend, hit her.

When Mr. Montoya interviewed the persons in the apartment, they indicated that Robin Hann had left the child with them the night before so that she could go to Chaparral, New Mexico to buy cocaine. It was suggested that C.H. was left as collateral to insure that Robin Hann would return with the cocaine. After further questioning, Mr. Montoya learned that Robin Hann had been leaving the child often with friends for one to three days every month. The child told Mr. Montoya that she would frequently be left alone overnight with no parental supervision to watch T.V. C.H. told Mr. Montoya that she was scared when left alone and would cry. At this point, Mr. Montoya removed the child from the apartment and took her into protective custody. The child has been in the custody of the TDPRS since March 31, 1994.

When TDPRS removed C.H., Ms. Hann was given visitation rights with her child. On several occasions, she was either late to or missed scheduled visits. Eventually, her visitation rights were suspended due to continued drug use and a refusal to attend drug treatment sessions.

On April 7, 1994, Ms. Hann was ordered to pay $5 per month in child support. In October 1994, she paid $70 in child support. From March 1995 until March 1996, Ms. Hann failed to pay any child support.

During the trial, TDPRS called several witnesses to discuss the best interest of the child. Sondra Smith, a caseworker for the child, testified that termination of Robin Hann's parental rights was in the child's best interest. Ms. Smith stated that the child's age makes her vulnerable because she has been a witness to problems with her mother's behavior. Ms. Smith feels that the child is in a "yo-yo" where she is able to see her mother, then denied visitation because of her mother's return to drugs.

Jean Kiddney, a psychotherapist who worked with the child, testified that the child is "having some difficulty in knowing who to bond with." She also stated that she did not believe the mother could provide a stable, safe, and secure environment for the child. Rebecca Ochoa, one of Robin Hann's thera-

pists, testified that it was in the child's best interest to have some permanency, consistency, and stability in her life. At the time of her testimony, Ms. Ochoa felt that Robin was not capable of providing C.H. with "things like stability and all the attention the child would need and all the rest of the needs...."

After the reunification plan was terminated by TDPRS, the trial resumed. On August 23, 1996, Yvette Herrera, a Child Protective Services' caseworker for C.H. and Robin Hann, witnessed a change in C.H. Ms. Herrera noticed that C.H. appeared openly sad, hateful, and guilty. Ms. Herrera felt that C.H. was experiencing those feelings because of circumstances surrounding her life. She stated that it would not be in the best interest of the child for her to be returned to Robin Hann. On September 5, 1996, TDPRS called Rita Ruelas. Ms. Ruelas is the clinical director of the El Paso Guidance Center. She testified that Robin Hann could not provide a secure, stable environment for C.H. She also stated that during therapy sessions, C.H. has been voicing frustration, anger, and disappointment with her mother. In her opinion as a family reunification specialist, Ms. Ruelas felt that it was in the best interest of C.H. to terminate Robin Hann's parental rights.

## DISCUSSION

Ms. Hann has raised four points of error regarding the legal and factual sufficiency of the trial court's rulings. Each point of error attacks the legal and factual sufficiency of the evidence to establish the statutory requisites for involuntary termination of the parent-child relationship. The statute allows for termination of parental rights upon a finding that the parent engaged in conduct described in *any one* of the fourteen sub-parts under Section 161 of the Family Code, plus a finding that termination is in the best interest of the child.[3] Stated differently, a finding on any one ground, coupled with a finding that termination is in the best interest of the child, is sufficient to terminate parental rights.[4] In this case, the trial court found the evidence sufficient on each ground. We therefore must uphold the trial court's ruling in this case so long as there is evidence sufficient to support termination on any one of the four theories alleged.

## STANDARD OF REVIEW

Recently, this court has determined that where the burden of proof at trial is by clear and convincing evidence, we will apply the higher standard of factual sufficiency review first articulated in *Neiswander v. Bailey, 645 S.W.2d 835 (Tex.App.–Dallas 1982, no writ).*[5] After considering all of the evidence, we must determine whether the trier of fact could reasonably conclude that the existence of the fact is highly probable.[6] Under this standard, we must consider whether the evidence was sufficient to produce in the mind of the fact finder a firm belief or conviction as to the truth of the allegations sought to be established.[7] We will sustain an insufficient evidence point of error only if the fact finder could not have reasonably found the fact was established by clear and convincing evidence.[8]

In this case, the trial court issued findings of fact and conclusions of law. We review findings made by a trial court in the same manner as jury findings.[9] However, when a complete statement of facts appears

---

3. Tex. Fam.Code Ann. § 161.001(1) & (2) (Vernon 1996 & Supp.1998); *Edwards v. Texas Dep't of Protective and Regulatory Servs.*, 946 S.W.2d 130, 134 (Tex.App.—El Paso 1997, no writ); *Dupree v. Texas Dep't of Protective and Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex.App.—Dallas 1995, no writ) (trial court may terminate parent-child relationship if the fact finder determines a parent has been found to have committed one or more of the acts described in the Family Code and that termination is in the best interest of the child).

4. *Edwards*, 946 S.W.2d at 135.

5. *In Interest of B.R.*, 950 S.W.2d 113, 118–19 (Tex.App.—El Paso 1997, no writ).

6. *Id.* at 119.

7. *Id.*

8. *Id.*

9. *Lucas v. Texas Dep't of Protective and Regulatory Servs.*, 949 S.W.2d 500, 502 (Tex.App.—Waco 1997, writ denied).

in the record, we are not limited to the trial court's written findings of fact.[10]

## LEGAL SUFFICIENCY

A legal sufficiency challenge to a fact-finding requiring clear and convincing evidence does not mandate an alteration in the standard of review. In considering a legal sufficiency or "no evidence" point, an appellate court considers only the evidence which tends to support the challenged finding and disregards all evidence and inferences to the contrary.[11] If any probative evidence supports the fact finder's determination, it must be upheld.[12]

### Section 161.001(1)(D) & (E) of the Family Code

In her first point of error, Ms. Hann argues that the continuance effectively removed the evidence from the first part of the trial so that it may not be considered in addressing the sufficiency of the evidence presented to support the termination based on endangerment. Although we are allowed to disregard all evidence and inferences contrary to the findings in conducting a legal sufficiency review, we cannot summarily decide not to consider evidence that is part of the record because a continuance interrupted the trial.[13] Consequently, we will consider the evidence which tends to support the challenged finding even if that evidence was introduced in the early stages of a lengthy trial.

Section 161.001(1)(D) requires that evidence establish that the environment within which the child is placed caused the child's physical or emotional well-being to be endangered.[14] Under Section 161.001(1)(E), the cause of the danger to the child must be

the parent's conduct alone, as evidenced not only by the parent's acts but also by the parent's omissions or failures to act.[15] Section 161.001(1)(E) of the statute does not require a showing that a parent's conduct caused an actual adverse effect upon the child.[16] It is sufficient to establish endangerment that the child's well-being be jeopardized or exposed to loss or injury.[17] In addition, the specific danger to the child's well-being need not be established as an independent proposition, but may instead be inferred from parental misconduct.[18]

Mr. Montoya's testimony clearly established Robin Hann's negligent acts. She endangered the child's physical and emotional well-being by leaving her child alone overnight with known cocaine abusers with open sores on their bodies, in dirty conditions, so that she might purchase cocaine. Mr. Montoya's further testimony that when the child was found without her mother she was physically dirty, in a foul smelling, dark apartment, and scared by the ordeal, supports the finding of endangerment because of the environment to which the child was exposed. Because this testimony is probative evidence that easily supports the trial court's determination, we must uphold the finding against a legal sufficiency challenge to Sections 161.001(1)(D) & (E).

## FACTUAL SUFFICIENCY

Even applying the heightened standard of review which we have adopted, a factual sufficiency point requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust.[19] The reviewing court cannot substitute its conclu-

10. *Id.*(internal citations omitted).

11. *In Interest of B.R.*, 950 S.W.2d at 119; *Parallax Corp., N.V. v. City of El Paso*, 910 S.W.2d 86, 89 (Tex.App.—El Paso 1995, writ denied).

12. *In Interest of B.R.*, 950 S.W.2d at 119.

13. *Cf. Lancaster v. State*, 772 S.W.2d 137, 139 (Tex.App.—Tyler 1988, pet. ref'd).

14. *In Interest of H.C.*, 942 S.W.2d 661, 664 (Tex. App.—San Antonio 1997, no writ).

15. *Edwards*, 946 S.W.2d at 138.

16. *Id.* (internal citations omitted).

17. *Id.* (internal citations omitted).

18. *Id.* (internal citations omitted).

19. *In Interest of B.R.*, 950 S.W.2d at 121 (internal citations omitted).

sions for those of the fact finder.[20] If sufficient competent evidence of probative force exists to support the finding, it must be sustained.[21] We may not interfere with the fact finder's resolution of conflicts in the evidence or pass on the weight or credibility of the witnesses' testimony.[22] Where conflicting evidence is present, the fact finder's determination on such matters is generally regarded as conclusive.[23] We believe that the formulation of factual sufficiency review, that the trial judge's determination must be "against the great weight and preponderance of the evidence," implies some sort of balancing test. That is, there should generally be evidence contrary to the judge's finding, not just weak evidence supporting it.[24]

### Section 161.001(1)(D) & (E) of the Family Code

TDPRS sought to terminate Robin Hann's parental rights because she knowingly placed or knowingly allowed her child to remain in conditions or surroundings which endanger the physical and emotional well-being of the child; and engaged in conduct or knowingly placed her child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. As previously discussed, there was ample evidence to support the endangerment findings under these sections. The only evidence that controverts these findings is testimony that offers an excuse as to why Robin Hann did not return on the night in question. After considering all the evidence, we find that it was highly probable that the trial court could reasonably conclude that the child was endangered according to Sections 161.001(1)(D) & (E). Appellant's first point of error is overruled. Having found legally and factually sufficient evidence to support the trial court's rulings on at least one of the grounds supporting termination, we need not address Points of Error Two and Three.

### BEST INTEREST OF THE CHILD

▓▓▓▓ We must next consider whether there was legally and factually sufficient evidence to find that termination was in the best interest of the child. Ms. Hann maintains in Point of Error Four that the trial court erred in terminating her parental rights because the evidence is legally and factually insufficient to show that termination was in the best interest of the child. In *Holley v. Adams*, the Supreme Court held that a number of factors may be examined in ascertaining the best interest of a child, including: (1) emotional and physical needs of the child now and in the future; (2) parental abilities of the parent seeking custody; (3) programs available to assist the parent seeking custody; (4) the plans for the child by the parent or the agency seeking custody; (5) the stability of the home or the proposed placement; and (6) any acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one.[25] Because the relationship between a parent and child is one of constitutional dimensions, we must recognize the presumption that the best interest of the child will be served by preserving the parent-child relationship.[26]

The need for permanence is the paramount consideration for the child's present and future physical and emotional needs. The goal of establishing a stable, permanent home for a child is a compelling interest of the government.[27] In applying the heightened legal sufficiency standard previously discussed, we find that there was probative evidence to support the trial court's determination on this issue. The testimony of Jean Kiddney and Rebecca Ochoa that Robin Hann could not provide a stable, safe, and secure envi-

20. *Id.* (internal citations omitted).

21. *Id.* (internal citations omitted).

22. *Id.* (internal citations omitted).

23. *Id.* (internal citations omitted).

24. *America West Airlines, Inc. v. Tope,* 935 S.W.2d 908, 916–17 (Tex.App.—El Paso 1996, no writ).

25. *Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex.1976).

26. *Edwards,* 946 S.W.2d at 138.

27. *Id.* (internal citations omitted).

ronment for the child is evidence that we must consider because it tends to support the challenged finding. Accordingly, we must uphold the finding that the termination of Robin Hann's parental rights was in the best interest of the child.

In applying the heightened factual sufficiency standard, we find that the finding of best interest is not so against the great weight and preponderance of the evidence as to be manifestly unjust. Although there is a wide variety of evidence supporting both sides of the best interest determination, we note that our review is limited: we cannot substitute our conclusions for those of the trial court; and we may not interfere with the trial court's resolution of conflicts in evidence or pass on the credibility of witnesses' testimony.[28]

There was substantial testimony that the best interest of C.H. necessarily required the termination of Robin Hann's parental rights. Similarly, Robin Hann presented considerable evidence that she had made significant improvements in her life with regard to her drug use and her parenting skills. There is evidence that she found and attended programs that would assist her as a parent. Nevertheless, we cannot conclude that the fact finder, the trial court, should have reached a different conclusion. Consequently, we hold it was highly probable that the trial court could determine that it was in the best interest of the child to terminate the parental rights of Robin Hann. There was factually sufficient evidence to produce in the mind of the trial court a firm belief or conviction that the best interest of the child were served by severing the parental rights of Robin Hann. Accordingly, appellant's fourth point of error is overruled.

## CONCLUSION

Because there was legally and factually sufficient evidence to support two grounds for termination on the basis of endangerment and there was legally and factually sufficient evidence to find termination in the best inter-

est of the child, we affirm the trial court's ruling.

---

28. *In Interest of B.R.,* 950 S.W.2d at 121.