NO. 07-04-0220-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



JULY 21, 2004



______________________________




ROBERT ALEMAN CENISEROS, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 242ND DISTRICT COURT OF HALE COUNTY;



NO. B14963-0305; HONORABLE ED SELF, JUDGE



_______________________________



Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

MEMORANDUM OPINION


 Appellant Robert Aleman Ceniseros filed a Notice of Dismissal on July 20, 2004,
averring that he no longer wishes to prosecute his appeal. The Notice of Dismissal is
signed by both appellant and his attorney. 

 Without passing on the merits of the case, appellant's motion for voluntary dismissal
is granted and the appeal is hereby dismissed. Tex. R. App. P. 42.2. Having dismissed 


the appeal at appellant's personal request, no motion for rehearing will be entertained and
our mandate will issue forthwith. 



 Phil Johnson

 Chief Justice





Do not publish.



the parent
and expressed an intent not to return, 2) knowingly placed or knowingly allowed the child
to remain in conditions or surroundings that endangered the physical or emotional well-
being of the child, 3) engaged in conduct or knowingly placed the child with persons who
engaged in conduct that endangered the physical or emotional well-being of the child, and
4) used a controlled substance (as defined by chapter 481 of the Texas Health and Safety
Code) in a manner that endangered the health or safety of the child and failed to complete
a court-ordered substance abuse treatment program. Vickers does not contest these
findings on appeal. 

 Also noteworthy are the indicia which are known as the Holley factors. They were
considered by the court in Holley v. Adams, 544 S.W.2d 367 (Tex. 1976), to be helpful in
assessing the child's best interest. Included among them are: 1) the desires of the child,
2) the emotional and physical needs of the child now and in the future, 3) the emotional
and physical danger to the child now and in the future, 4) the parental abilities of the
individuals seeking custody, 5) the programs available to assist those individuals to
promote the best interest of the child, 6) the plans for the child by those individuals seeking
custody, 7) the stability of the home, 8) the acts or omissions of the parent which may
indicate that the existing parent/child relationship is not a proper one, and 9) any excuse
for the acts or omissions of the parent. In re P.E.W., 105 S.W.3d at 779-80. One need
not prove that each Holley factor favors termination, id. at 780, and the list is not
exhaustive. In re C.J.F., 134 S.W.3d 343, 354 (Tex. App.-Amarillo 2003, pet. denied). 
There must simply be enough evidence from which the factfinder can reasonably form a
firm conviction or belief that the child's best interest warrants termination. In re P.E.W.,
105 S.W.3d at 780. 

 Application of Law

 Termination was sought by Denise Ann and Bobby Joe Humphrey (the Humphreys)
who wished to adopt the child. The Humphreys were unrelated to the child, but he was
often left in the care of Bobby Joe's daughter Dasha Humphrey who was a friend of
Vickers. An affidavit of relinquishment of parental rights was executed by Vickers on April
28, 2004, with her knowledge that the Humphreys wished to permanently care for the child. 
However, Vickers revoked that affidavit on May 7, 2004. (1) There was evidence that Vickers
believed the child was better off with the Humphreys but that she was afraid her adopted
mother, Paula June Vickers (Paula June), (2) upon whom she relied financially, would be
angry when she learned of her execution of the document. Further, there was evidence
that Paula June pressured Vickers into making the revocation. (3)

 Also appearing of record is evidence that Vickers was twenty three at the time of
trial, had three children by three different fathers, (4) and had been married to none of them. 
She not only failed to complete high school but also held only two jobs for a total of
approximately four months since 2004. So too do we find evidence that she 1) did not
maintain a permanent home as she lived off and on with her adopted mother, her biological
mother, various boyfriends, or friends, 2) had never been self-supporting, 3) lived in several
places lacking utilities, 4) used cocaine and crack cocaine from 2000 through April 2004,
often on a daily basis and while pregnant, 5) smoked and drank while pregnant with her
first child, 6) was under the influence of intoxicants when in the presence of another of her
children, 7) left T.A.A.V. on many occasions with other persons, including Dasha
Humphrey, so she (Vickers) could party or use drugs, 8) lost custody of her oldest child on
one occasion based on an allegation she had burned him with a cigarette, 9) pled guilty
and was placed on probation for food stamp fraud in October 2004, 10) attended a party
at which intoxicants were ingested days prior to pleading guilty to the food stamp charge,
11) had altered checks given to her by her adopted mother, 12) could not provide proof
that she had completed a court-ordered drug treatment program she entered in August
2004, 13) could not remember how long the drug treatment program lasted, who her
sponsor was, or any of the twelve steps involved in it, and 14) stated she had not stopped
drinking alcohol until January 2005, even though the terms of her 2004 probation required
her to do so. Other evidence revealed that Child Protective Services was called to the
home of Vickers' biological mother when Vickers was living there with T.A.A.V. because
the living conditions were filthy. Her boyfriend's house whereat she also lived was similarly
filthy. Once, Vickers' adopted mother had to retrieve T.A.A.V. and his brother from the
home of a friend of Vickers after a party was held there and all the adults had gone to
sleep leaving the children unsupervised. Finally, evidence disclosed that the Humphreys
had cared for the child for two and one-half years before trial, made a good living, had a
satisfactory, stable home, and bonded with the child. 

 Evidence that a mother cannot provide a stable, safe, and secure environment
supports a finding that it is in a child's best interest to terminate the mother's rights. See
Hann v. Texas Dep't of Protective and Regulatory Services, 969 S.W.2d 77, 83-84 (Tex.
App.-El Paso 1998, pet. denied) (upholding the termination because evidence appeared
of record illustrating that the parent could not provide such an environment). And, while
some of Vickers' conduct involved children other than T.A.A.V., a parent's conduct directed
toward one child can support termination of parental rights as to another child even though
it did not occur in the child's presence. In re S.A.P., 169 S.W.3d 685, 703 (Tex. App.-
Waco 2005, no pet.). 

 Admittedly, at the time of trial, there was evidence that Vickers had passed three
drug tests before trial, had exercised her supervised visitation rights with the child, was
living with her adopted mother in a satisfactory home, and had possession of her other two
children. (5) However, she remained financially dependent on government assistance and
her adopted mother who was 69 years old and experiencing health problems. Nor had
Vickers made effort to attend school or obtain employment. (6) 

 Given the lack of a challenge to the statutory grounds justifying termination and the
evidence recited above, the trial court could have formed a firm belief or conviction that
termination of Vickers' parental rights was in the best interest of the child. In re J.F.C., 96
S.W.3d at 272 (holding that although at time of trial the mother had found work, the home
was a safe environment, and the parents were described as a loving couple, a factfinder
could reasonably form a firm conviction or belief that termination was in the child's best
interest); In re A.C.B., 198 S.W.3d 294, 300 (Tex. App.-Amarillo 2006, no pet.) (holding
that despite evidence that at the time of trial, the mother was maintaining stable
employment and housing, keeping her home clean, paying child support, visiting her
children, and properly taking her medication, the court could have formed a firm belief that
termination was in the best interest of the child). Thus, we find the evidence both legally
and factually sufficient. 

 The judgment of the trial court is affirmed.


 Brian Quinn 

 Chief Justice
1. Vickers claimed at trial that she was incapacitated by having used crack cocaine that morning and
that she believed she was only granting the Humphreys temporary custody of her son while she was going
to have to "sit . . . out" a ticket for driving without insurance which her grandmother paid on the same day
Vickers signed the affidavit. 
2. Paula June Vickers was both the adopted grandmother and mother of Vickers. Paula June had
adopted Vickers' biological mother, Sandy Holcombe, when she was two years old, and then adopted Vickers
after she was born. 
3. When Paula June first learned that the Humphreys had the child, Vickers told Paula June that he had
been taken or kidnaped and Paula June called the police. 
4. T.A.A.V. was the middle child of Vickers. 
5. It appears that legal custody for the oldest child remained with his father, although the father was
allowing Vickers to have possession of him. 
6. Paula June stated that Vickers was learning to help in the family's pest extermination business, but
there was evidence that it was not a full-time business.