NO. 07-04-0467-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



JUNE 7, 2005


______________________________



IN THE INTEREST OF K.M., a child 


_________________________________



FROM THE 320th DISTRICT COURT OF POTTER COUNTY;



NO. 67,878-D; HON. DON EMERSON, PRESIDING


_______________________________



Memorandum Opinion


_______________________________




Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

 Annie Dora Marsh appeals from an order terminating her parental relationship with 
her daughter, K.M. The latter was removed from her care several days after K.M.'s birth. 
The sole issue before us concerns whether the evidence was sufficient to support a finding
that termination was in the best interests of K.M. Marsh does not argue that the State
failed to prove a statutory ground for termination but rather that no one said termination
would be in the best interests of the child. We affirm the order of the trial court.

 Applicable Law

 The applicable standard of review is discussed in In re J.F.C., 96 S.W.3d 256, 266
(Tex. 2002) and In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). We refer the litigants to them
for a discussion of it. 

 Next, we note that the evidence establishing a statutory ground for termination may
also be used to support a finding that the best interests of the child warrant termination of
the parent/child relationship. In re C.H., 89 S.W.3d at 28; In re P.E.W., 105 S.W.3d 771,
779 (Tex. App.-Amarillo 2003, no pet.). Also noteworthy are the indicia which have
become known as the Holley factors. Espoused in Holley v. Adams, 544 S.W.2d 367 (Tex.
1976), they were considered helpful by that court in assessing the child's best interests. 
Included among them are: 1) the desires of the child; 2) the emotional and physical needs
of the child now and in the future; 3) the emotional and physical danger to the child now
and in the future; 4) the parental abilities of the individuals seeking custody; 5) the
programs available to assist those individuals to promote the best interests of the child; 6)
the plans for the child by those individuals or by the agency seeking custody; 7) the stability
of the home or proposed placement; 8) the acts or omissions of the parent which may
indicate that the existing parent/child relationship is not a proper one; and 9) any excuse
for the acts or omissions of the parent. In re P.E.W., 105 S.W.3d at 779-80. Though
helpful in assessing the situation, one need not prove that each Holley factor favors
termination, however. Id. at 780. Nor is the list exhaustive because other indicia may also
be relevant. In re C.J.F., 134 S.W.3d 343, 354 (Tex. App.-Amarillo 2003, pet. denied). 
Again, all the State need do is present enough evidence from which the factfinder can
reasonably form a firm conviction or belief that the child's best interests warrant
termination. In re P.E.W., 105 S.W.3d at 780. 

 Application of Law

 Here, no one questions the evidence illustrating that Marsh suffered from a life-long
mental disorder (schizophrenia) which would most likely prevent her from ever being able
to physically care for K.M. So too was it shown that the disorder involved paranoid
delusions and, in the opinion of the testifying psychologist, people suffering from that kind
of illness "tend to be the most dangerous people out of all mental disorders." They were
"the type of people that buy high-powered rifles and get up on top of buildings and shoot
people," he continued. Moreover, at least one witness testified Marsh recently had
purchased a firearm, took lessons in how to use it, and made comments about doing what
she needed to do to retrieve her children. So too did witnesses testify that she threatened
to shoot various people in the head. 

 Also appearing of record is evidence that 1) appellant had an I.Q. of 71, which
placed her intelligence range within the third percentile of those her own age, 2) though
subject to treatment, appellant would stop taking the medication prescribed her, 3)
appellant waived her parental rights viz her older child after he was removed from her
custody due to her inability to adequately care for him, 4) appellant lacked the "skills to be
able to adequately care for a child" and would need around the clock help if the child was
left in her care, 5) appellant never had been employed, 6) the Texas Panhandle Mental
Health Mental Retardation organization had the responsibility of assuring that appellant
appropriately spent her monthly disability check, 7) appellant had been arrested for assault,
8) appellant threatened to harm a Child Protective Services (CPS) case worker, the foster
parent of her child, and a worker for the Panhandle Assessment Center who monitored her
visits with the child, 9) appellant was seen talking to herself at a court hearing, 10) appellant
sometimes called herself and her child by other names, 11) appellant said that she would
"have to murder the bitch," 12) appellant became agitated during visits with her child, was
not able to comfort the child, would talk to the wall, and would allow the baby's head to flop
over during those times, 13) there was no bond between appellant and K.M., 14) appellant
testified in court that she bought a gun because she had "been having a lot of people jump
on [her] lately and threatening [her]" and that people were threatening to kill her children
because they did not like her, and 15) appellant had been seen outside the CPS offices on
all fours barking like a dog. Further evidence indicated that 1) the child needed a safe and
secure environment, 2) placement with the older child's foster mother could not be
considered because a special license had been given to that foster mother for only one
child, 3) the child's grandmother and great-grandmother were not suitable caretakers for
the child, 4) the child had bonded with her foster mother, 5) the plan was for adoption by
the foster mother who would be able to receive an adoption subsidy, Medicaid, and college
tuition for the child, 6) the foster mother lived in a three-bedroom brick home in a nice area
of town, and 7) the child was developing regularly in her foster home. Finally, there was
testimony that it would be in the child's best interests to be placed in her current foster
home. 

 Testimony that a mother cannot provide a stable, safe, and secure environment
supports a finding that it is in a child's best interests to terminate the mother's rights. See
Hamm v. Texas Dep't of Protective and Regulatory Services, 969 S.W.2d 77, 83-84 (Tex.
App.-El Paso 1998, pet. denied) (upholding the termination because evidence appeared
of record illustrating that the parent could not provide such an environment). Ample,
undisputed testimony appears in the record at bar to illustrate that Marsh could not provide
K.M. with such an environment. And, while it may be true that no witness expressly said
that the best interests of the child favored termination of appellant's rights, the evidence
before the trial court is sufficient to uphold such a finding. At the very least, it was enough
to enable the factfinder to reasonably form a firm conviction or belief that termination was
in the child's best interests. 

 Accordingly, we overrule the point of error and affirm the order terminating the
parental relationship between Marsh and K.M.


 Per Curiam