NO. 07-07-0354-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 16, 2008
_____

In the Interest of A.C., a child
_____

FROM THE 222ND DISTRICT COURT OF DEAF SMITH COUNTY;

NO. DR-06A-019; HON.  PHIL N. VANDERPOOL, PRESIDING
_____

***Memorandum Opinion***
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Crystal Chavez and Juan Cano appeal from an order terminating their parental rights to their minor daughter, A.C.  We affirm the trial court's order.

### Cano Appeal

Cano asserts various issues attacking the trial court's decision.  However, we do not find a statement of points itemizing the issues he intended to present on appeal.  *See* TEX. FAM. CODE ANN. §263.405(i) (Vernon Supp. 2007); *In re R.C.,* 243 S.W.3d 674, 675-76 (Tex. App.–Amarillo 2007, no pet.).  Accordingly, we dismiss his appeal.

### Chavez Appeal

Chavez raises three issues for us to consider.  Through two, she attacks only two of the four statutory grounds found by the trial court to warrant termination.  Through the

third issue, she attacks the finding that termination was in the best interest of the child. We overrule each.[1]

As for the issues encompassing the statutory grounds for termination, we note that only one ground need be established to support an order of termination. *In re N.S.G.,* 235 S.W.3d 358, 363 (Tex. App.–Texarkana 2007, no pet.). Chavez having addressed on appeal only two of the four grounds, she waived any complaint she had about the others. Thus, at least two grounds existed which supported the trial court's decision.

As for the issue encompassing the best interest of the child, we note that the evidence establishing a statutory ground for termination may also be considered when assessing the best interest of the child. *In re C.H.,* 89 S.W.3d 17, 28 (Tex. 2002). Also noteworthy are the indicia known as the *Holley* factors. They too are helpful in assessing the child's best interest. *Holley v. Adams,* 544 S.W.2d 367, 372 (Tex. 1976). Included among them are: 1) the desires of the child, 2) the emotional and physical needs of the child now and in the future, 3) the emotional and physical danger to the child now and in the future, 4) the parental abilities of the individuals seeking custody, 5) the programs available to assist those individuals to promote the best interest of the child, 6) the plans for the child by those individuals seeking custody, 7) the stability of the home, 8) the acts or omissions of the parent indicating that the existing parent/child relationship is not a

---

[1]The State contends that Chavez failed to timely file a statement of points as well. We disagree. The trial court's order of termination was signed on August 1, 2007, and the statement of points was not filed marked until August 20, 2007. Yet, it was mailed to the clerk on August 16, 2007. Given the mailbox rule, *See* TEX. R. CIV. P. 5 (providing that any document sent to the clerk in an envelope properly addressed and stamped and is deposited in the mail on or before the last day for filing and received by the clerk not more than ten days late shall be deemed filed in time), Chavez satisfied the fifteen-day rule specified in the Texas Family Code. *See* TEX. FAM. CODE ANN. §263.405(b) (Vernon 2002) (requiring the statement to be filed within fifteen days of judgment).

proper one, and 9) any excuse for the acts or omissions of the parent. *In re P.E.W.,* 105 S.W.3d 771, 779-80 (Tex. App.–Amarillo 2003, no pet.). More importantly, one need not prove that each *Holley* factor favors termination. *Id.* at 780. Nor is the list exhaustive. *In re C.J.F.,* 134 S.W.3d 343, 354 (Tex. App.–Amarillo 2003, pet. denied). Instead, there must simply be enough evidence from which the factfinder can reasonably form a firm conviction or belief that the child's best interest justifies termination. *In re P.E.W.,* 105 S.W.3d at 780.

The record before us showed that Chavez, who was mildly retarded and had only a ninth grade education, had been raised in a home where she was abused and neglected. Furthermore, her first pregnancy by Cano (who was in his twenties at the time) occurred when she was fifteen years old. That child was stillborn. Other evidence illustrated that Chavez eventually lived with Cano for a year and a half and that he physically threatened and abused her. After one such instance of abuse, the Department of Family and Protective Services (Department) became involved. And, though Chavez knew that she was not to see Cano, she disregarded that.

Next, after the birth of A.C., the child became sick with meningitis and RSV and had to be hospitalized. Hospital personnel called the Department and reported their concerns regarding Chavez' ability to care for the sick child. This resulted in the Department taking custody of the infant.

Also appearing of record is the following evidence: 1) Chavez and A.C. were placed in several different foster homes together but had to be removed due to the poor behavior of Chavez (as exemplified by her effort to physically confront a foster parent), 2) the foster

parents had to constantly remind Chavez to do things for the care of the child, 3) Chavez ran away after being placed with the PAC shelter in Amarillo and having A.C. removed from her custody for holding the child by the ankles and swinging her, 4) Chavez returned to Cano after she ran away, 5) she was next placed with a shelter in Wichita Falls where she stayed for only one day before running away and being arrested for driving without a license, 6) Chavez was placed in a shelter in Lubbock but was removed after she disappeared for a time with an eleven-year-old child, 7) she failed on more than one occasion to place children in safety seats, 8) Chavez had been stopped for driving a car on the wrong side of the road when she had another infant with her and had drunk eight bottles of "Bacardi," 9) she was resistant to learning from services offered by the Department, failed to complete counseling and parenting classes, and had a poor support system in her life, 10) she lacked the ability to parent and could not place the child's needs above her own, according to psychological testing, 11) she had been arrested and jailed for truancy at the time of trial, 12) Chavez only worked for three weeks at the only job she ever had, 13) she gave birth to another child by another father at the time of trial and intended to live with him and have him support her and the child, 14) neither Chavez' family nor Cano's family had passed a home study, and 15) A.C., who was nearly two years old at the time of trial, was doing well with her foster parents, which foster parents had an interest in adopting her.

Evidence that a mother cannot provide a stable, safe, and secure environment supports a finding that it is in the child's best interest to terminate a mother's parental rights. *See Hann v. Texas Dep't of Protective and Regulatory Services,* 969 S.W.2d 77, 83-84 (Tex. App.–El Paso 1998, pet. denied) (upholding the termination because evidence

4

appeared of record illustrating that the parent could not provide such an environment). The litany of evidence itemized above established Chavez' inability to provide such an environment. Thus, the trial court had before it evidence upon which it reasonably could have formed a firm belief or conviction that termination of the parental rights of Chavez was in the best interest of A.C.

The order of the trial court is affirmed.

Brian Quinn
Chief Justice