**Opinion issued June 26, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00041-CV

———————————

## IN THE INTEREST OF K.D.B.

———————————

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-0637J**

———————————

## MEMORANDUM OPINION

Appellant H.K.C. (hereinafter, Father or appellant) challenges the trial court's termination of his parental rights to the minor child, K.D.B. Father contends the evidence is legally and factually insufficient to support the trial court's findings that he engaged in the conduct described in subsections (O) and

(Q) of Texas Family Code section 161.001(1).[1] Because we hold that the evidence is legally and factually sufficient to support the trial court's finding that Father engaged in the conduct described in subsection (Q), we affirm the trial court's judgment.

## BACKGROUND

C.N.B. [hereinafter, Mother] has three children—L.K.C., K.D.B., and C.Y.S. K.L.C.'s father is unknown; appellant is the father of K.D.B. (hereinafter, the Child); C.J.S. is the father of C.Y.S.

The Department of Family and Protective Services (hereinafter, the Department) first received a referral for this family in December 2007 when Mother tested positive for opiates, PCP, and cocaine after the birth of the Child. The Department did not seek custody at that time, but it offered a family services plan. However, the family moved and did not leave an address where they could be found.

In June 2008, the Department received another referral alleging neglectful supervision, and again the family moved without notifying the Department.

In December 2008—a year after the Child was born—the Department received a third referral alleging physical abuse and neglectful supervision. The

---

[1]     *See* TEX. FAM. CODE ANN. § 161.001(1) (Vernon 2014).

Department found reason to believe the allegations and offered a family services plan, but again the family moved without notifying the Department.

On October 16, 2012, the Department received a fourth referral—which gives rise to the present appeal—alleging that the five-year-old Child had been left alone on many occasions by C.J.S., the father of one of the Child's siblings, while Mother was at work. As a result of leaving the Child unattended, C.J.S. was later convicted of Abandoning or Endangering a Child.[2]

On November 8, 2012, the Department filed a petition seeking to be named temporary managing conservator of the Child and her siblings, L.K.C. and C.Y.S. After the trial court found that there was a continuing danger to the physical health or safety of the children and that remaining in their home was contrary to their welfare, the court placed all three children in the Department's temporary conservatorship.

While the children were under the Department's conservatorship, it created family service plans for each of the parents, including Father. During the entire time that the Child was under the Department's conservatorship, Father was imprisoned in Louisiana on a 5 year, 2 month, 27 day sentence that began on December 29, 2011. Because of his incarceration, Father was not involved "in the circumstances that led up to the children being picked up."

---

[2] *See* TEX. PENAL CODE ANN. § 22.041 (Vernon 2011).

3

At trial, the Department presented evidence of Father's extensive criminal history, including a six-year sentence for burglary, a three-year sentence for possession of cocaine, a two-year sentence for second degree battery committed against the Child's mother, and a three-year sentence for possession of codeine. The record also showed several parole violations and at least one parole revocation.

After a bench trial on October 8, 2013, the trial court terminated the parental rights of Father, Mother, and C.J.S. This appeal concerns the propriety of the trial court's order terminating the parent-child relationship between Father and K.D.B., the middle child.

## PROPRIETY OF TERMINATION OF PARENTAL RIGHTS

In two issues, Father contends (1) the evidence was legally and factually insufficient to support termination under subsection (Q) of section 161.001(1), and (2) that the trial court erred in terminating his parental rights under subsection (O) because (a) there was legally and factually insufficient evidence to do so and (b) his right to procedural due process was violated. Because Father does not challenge the best-interest finding, we must uphold the order of termination if there is factually sufficient evidence to support either of the two predicate grounds alleged. *See Hann v. Tex. Dep't of Protective & Regulatory Servs.*, 969 S.W.2d 77, 81 (Tex. App.—El Paso 1998, pet. denied).

*Termination Under Subsection (Q)*

In his first issue, Father contends the evidence is legally and factually insufficient to support termination under subsection (Q) of section 161.001(1). Under this subsection, the Department was required to prove by clear and convincing evidence that Father knowingly engaged in criminal conduct that has resulted in the Father's (1) conviction of an offense and (2) confinement or imprisonment and inability to care for the Child for not less than two years from the date on which the Department filed the termination petition. *See* TEX. FAM. CODE § 161.001(1)(Q); *In re A.V.*, 113 S.W.3d 355, 360 (Tex. 2003) (construing phrase "two years from the date of filing the petition" to apply prospectively from date of filing petition).

On appeal, Father does not argue that the evidence is legally or factually insufficient to support the trial court's finding that the he knowingly engaged in criminal conduct that resulted in his conviction of an offense. Rather, Father argues that the evidence is legally and factually insufficient to support the finding that his criminal conduct resulted in his confinement or imprisonment for not less than two years from the date on which the Department filed the termination petition.[3]

---

[3] Termination under subsection (Q) also requires that the Father's criminal conduct would result in the his inability to care for the Child for not less than two years from the date on which the Department filed the termination

5

*Standard of Review*

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Texas Family Code, the petitioner must establish by clear and convincing evidence one or more acts or omissions enumerated under subsection (1) of 161.001 and that termination is in the best interest of the child under subsection (2). *See* TEX. FAM. CODE § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). When, as here, a parent does not challenge the best-interest finding on appeal, the appellate court will affirm if any of the predicate acts or omission in subsection (1) of 161.001 are met. *Hann*, 969 S.W.2d at 81.

Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). The heightened "clear and convincing evidence" burden of proof alters the appellate legal-sufficiency standard of review. *See In re J.F.C.*, 96 S.W.3d 256,

---

petition. *See In re H.R.M.*, 209 S.W.3d 105, 110 (Tex. 2006). Once the petitioner has established that a parent's knowing criminal conduct would result in his incarceration or confinement for at least this two-year period, the incarcerated or confined parent must produce some evidence showing how he would provide or arrange to provide care for the child during this period of incarceration. *See In re H.R.M.*, No. 14-05-00281-CV, 2007 WL 707553, at *3 (Tex. App.—Houston [14th Dist.] Mar. 8, 2007, no pet.) (mem. op.). Father essentially argues that this burden never shifted to him because the Department failed to show that he would be incarcerated for more than two years from the date the petition was filed.

264–66 (Tex. 2002). In conducting such a legal-sufficiency review, a court must look at all the evidence in the light most favorable to the termination findings to determine whether a reasonable trier of fact could have formed a firm belief or conviction that these findings are true. *Id.* at 266. "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal-sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its findings if a reasonable factfinder could do so." *Id.* Furthermore, a reviewing court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* This does not mean that a reviewing court must disregard all evidence that does not support the findings in question. *Id.* "Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence." *Id.* "If, after conducting its legal-sufficiency review of the record evidence, a court determines that a reasonable factfinder could not form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient." *Id.*; *see also In re J.L.*, 163 S.W.3d 79, 84–85 (Tex. 2005) (outlining legal-sufficiency standard of review).

In reviewing a factual-sufficiency challenge to termination findings, we give due consideration to evidence that the factfinder reasonably could have found to be

clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. The factual-sufficiency inquiry is whether the evidence is such that the factfinder reasonably could form a firm belief or conviction about the truth of the Department's allegations. *Id.* We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction [about the truth of the petitioners' allegations], then the evidence is factually insufficient." *Id.* We give due deference to fact findings, and we do not supplant the factfinder's judgment with our own. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). In affirming the trial court's ruling on a factual-sufficiency challenge, we need not detail all of the conflicting evidence. *In re A.B.*, No. 13-0749, 2014 WL 1998440 at *6 (Tex. May 16, 2014).

We apply the same legal-sufficiency and factual-sufficiency standards in reviewing the evidence regardless of whether we are reviewing a jury's verdict or, as in this case, the trial court's findings following a bench trial. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

*Analysis*

Thus, we address the sufficiency of the evidence to support the trial court's finding that Father's criminal conduct would result in his confinement or imprisonment for not less than two years from the date on which the Department filed the termination petition. The Department filed the petition to terminate Father's rights on November 8, 2012; accordingly, two years after filing the petition is November 8, 2014. *See In re A.V.*, 113 S.W.3d at 359–60.

At trial, Kayla Sorich, a caseworker for the Department testified as follows:

Q. Now [Father], the father of one child and not the father of the oldest that we thought he was the father of the oldest, was tested in jail, correct?

A. Correct.

Q And it took a long time for the test to come back but we finally got it back; is that correct?

A. Yes.

Q. And it shows that he is the father of [the Child] but not the father of [Mother's eldest child]?

A. Yes.

Q. Okay. And he's in jail in Louisiana and facing a release date of 2016, and possibly under work release, he could be out in 2014 in February; is that correct?

A. Yes, that's correct.

* * * *

9

Q. Okay. Now then, you know that [Father] has an extensive criminal history as well; is that correct?

A. Yes.

Q. But that history, presently he's in prison in Louisiana?

A. Yes.

Q. Serving a five year sentence, correct?

A. Correct.

Q. And his release date is in 2016. But if he's lucky on his work release, he could be out in 2014?

A. Yes.

Q. But that's possible?

A. That's a possibility.

On cross-examination of Sorich, the following exchange took place:

Q. Thank you. Now Mr. McInnis asked you the grounds from which you wanted to proceed to terminate the parental rights of [Father] as to [the Child]?

A. Yes.

Q. And was that the (Q) grounds?

A. I believe so.

Q. He can advise you. I won't object.

A. Yes. He can advise you.

Q. That's what he told us anyway. Are you aware from talking with him, as I am, that the actual set date for [Father's] release date is June 24 of 2016?

A. Yes. That's the actual date.

Q. But are you also aware that if he continues to progress in what he's doing, good time and everything, he can be released—he can be released as early as January 9 of 2014. Did he make you aware of that?

A. Yes, he did. But it isn't a guaranteed release date.

Q. Right. That's right. But it's neither not a guarantee that he will stay there and serve the full sentence, is it?

A. Yes.

Q. All right. So—and that—the file date on the original petition in this case was November 8th, 2014. Would you accept that? Or 2012, I mean.

A. Yes.

Q. Thank you for the correction. 2012. So looking ahead on that date, the file date, if he is paroled out or early released for any reason on January 9, '14 as set out in the official records, that would be only a period of about 14 months, all together, wouldn't it, from the date of the filing of the original petition?

A. Correct.

However, Father argues that, according to the Department's Exhibit 17, which is a copy of his prison records from Louisiana, "the Louisiana documents indicates that appellant will most likely be released on January 9, 2014 rather than serve his full sentence[,]" and that "the exhibit itself raises a strong inference that

11

appellant is more likely to be released on January 8, 2014 rather than after November 8, 2014." The document to which Father refers provides that Father's total sentence was for 5 years, 2 months, and 27 days. Under a section entitled "Release Dates" it contains the following information:

FTD: 06242016        PED: DISCB        ORIGINAL DS DT: 01092014
                                       ADJUSTED DS DT: 01092014

In considering the possibility of parole,[4] the Supreme Court of Texas has provided the following guidance in how we must review a finding that a parent's criminal conduct would result in the parent's confinement for not less than two years from the date on which the termination petition was filed:

> We recognize that a two-year sentence does not automatically meet subsection Q's two-year imprisonment requirement. In some cases, neither the length of the sentence nor the projected release date is dispositive of when the parent will in fact be released from prison. A parent sentenced to more than two years might well be paroled within two years. Thus, evidence of the availability of parole is relevant to determine whether the parent will be released within two years. Mere introduction of parole-related evidence, however, does not prevent a factfinder from forming a firm conviction or belief that the parent will remain incarcerated for at least two years. Parole decisions are inherently speculative, *Ex Parte Moussazadeh*, 64 S.W.3d 404, 413 (Tex. Crim. App. 2001) (citing *Ex Parte Evans*, 690 S.W.2d 274, 278 (Tex. Crim. App. 1985)), and while all inmates doubtless hope for early release and can take positive steps to improve their odds, the decision rests entirely within the parole board's discretion. *See In re K.R.M.*, 147 S.W.3d 628, 630 (Tex. App.—San Antonio 2004, no

---

[4] We recognize that this case does not involve parole, but appears to concern the possible diminution of Father's sentence because of accrued "good time" under a Louisiana statute. *See* LA. REV. STAT. ANN. § 15:571.3 (West Supp. 2012). We, nonetheless, find the supreme court's analysis regarding parole to be instructive.

pet.) (stating that a father's "hope that he might be granted early release is pure speculation"). If the mere possibility of parole prevents a jury from ever forming a firm belief or conviction that a parent will remain incarcerated for at least two years, then termination under subsection Q will occur only when the parent has no possibility of parole. By that rationale, the party seeking termination would have to show that there is zero chance of early release. This would impermissibly elevate the burden of proof from clear and convincing to beyond a reasonable doubt.

*In re H.R.M.*, 209 S.W.3d at 108–09. Further, evidence of participation in a pre-release program available to inmates within two years of parole does not preclude a finding the parent will remain incarcerated. *Id*. at 109.

Here, Father argues that "the Louisiana documents indicates that appellant *will most likely* be released on January 9, 2014 rather than serve his full sentence." (emphasis added). However, the only testimony about the meaning of the terms "ORIGINAL DS DT: 01092014" and "ADJUSTED DS DT: 01092014" came from Sorich, who acknowledged that "if [Father is] lucky on his work release, he could be out in 2014[,]" but that the "actual set date for [Father's] release date is June 24, of 2016[.]" Sorich also testified that early release was merely a "possibility." Father did not challenge the source of Sorich's knowledge, nor did he cross-examine her about the same. Thus, the record is silent about the source of Sorich's knowledge. However, appellant's own counsel acknowledged the uncertainty of early release when he asked Sorich, "[I]f he continues to progress in

13

what he's doing, good time and everything, he can be released—he can be released as early as January 9 of 2014?"

While the evidence illustrated the *possibility* of Father's release prior to November 2014, as the court determined in *H.R.M.*, such evidence did not prevent the trial court from forming a firm belief or conviction he would remain incarcerated after that date. *In re H.R.M.*, 209 S.W.3d at 109. The trial court was free to credit and give greater weight to the fact that Father was serving a 5–year sentence that had a release date of June 24, 2016. *See id.* Likewise, the factfinder could reasonably conclude that Exhibit 17's projected release date of January 2014 was speculative, especially in light of the testimony that early release because of "good time" was merely a "possibility." *See In re K.R.M.*, 147 S.W.3d 628, 630 (Tex. App.—San Antonio 2004, no pet.) (["Appellant's] hope that he might be granted early release is pure speculation."); *In re J.L.R.*, No. 11-05-00094-CV, 2006 WL 728069, at *2 (Tex. App.—Eastland Mar. 23, 2006, no pet.) (holding evidence sufficient under subsection Q despite testimony that petitioner could be released early because of "good time" credits). The trial court could also have considered appellant's criminal history and his unsuccessful completion of probation in determining whether it was likely that he would successfully obtain early release. *See In re H.R.M.*, 209 S.W.3d at 109.

*Summary*

Viewing the evidence under the proper standards, we find the evidence before the trial court was legally and factually sufficient to permit the court to form a firm conviction or belief that Father would remain incarcerated until at least two years after the petition was filed, i.e., until November 2014. *See In re H.R.M.*, 209 S.W.3d at 109.

Accordingly, we overrule Father's first issue.

## CONCLUSION

Having found legally and factually sufficient evidence to support the trial court's finding that the Father engaged in the conduct described in subsection (Q) of section 161.001, and because appellant does not challenge the best-interest finding, we need not address the trial court's finding that Father also engaged in the conduct described in subsection (O) and decline to do so. *See In re A.V.*, 113 S.W.3d at 362 (affirming termination decree based on one ground without reaching second ground found by fact finder and challenged by appellant).

We affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.