NO. 07-04-0595-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 22, 2006
_____

IN THE INTEREST OF P.M., A CHILD
_____

FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;

NO. 33,151; HON. PHIL VANDERPOOL, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Connie Lerma (Lerma) appeals from an order terminating the parental relationship between herself and her daughter P.M.[1] She raises seven issues. We consider them in the sequence urged and, upon doing so, affirm the order.

*Denial of Continuance*

Lerma first argues that the trial court abused its discretion in denying her motion to continue the trial. We overrule the issue.

The record discloses that Lerma sought a continuance to afford her new appointed counsel additional time to prepare for trial. Authority holds that absent a strong and specific showing of what additional preparation might have been made had the continuance been granted, the trial court may deny a continuance without abusing its

_____

[1]The parental rights of the father David Matice were also terminated, but he has not appealed.

discretion. *Standard Sav. Ass'n v. Cromwell*, 714 S.W.2d 49, 51 (Tex. App.–Houston [14th Dist.] 1986, no writ). The record before us contains no such evidence. None was tendered at the hearing held upon the motion. And, while the motion itself described the voluminous documentation counsel had to peruse and the opposing witnesses he had to interview, the item was neither verified nor supported by affidavit. Given that factual recitations contained in unsworn pleadings are not evidence, *Willacy County Appraisal Review Bd. v. South Padre Land Co.,* 767 S.W.2d 201, 204 (Tex. App.–Corpus Christi 1989, no writ), counsel's representations in his motion were of no probative value.

In short, we have concerns about the extremely abbreviated time within which the trial court afforded counsel to prepare for trial. *See Villegas v. Carter,* 711 S.W.2d 624, 626 (Tex. 1986) (holding that a trial court must afford new counsel reasonable time to prepare for trial). Nonetheless, Lerma did not show how the trial court's decision harmed her. Consequently, we cannot say that the trial court abused its discretion.

*Motion for Separate Trials*

Next, Lerma complains of the trial court's failure to grant her a separate trial from that of P.M.'s father, David Matice (Matice). Upon reviewing that issue under the standard of abused discretion, *see In re B.L.D.,* 113 S.W.3d 340, 347-48 (Tex. 2003), *cert. denied,* 541 U.S. 945, 124 S.Ct. 1674, 158 L.Ed.2d 371 (2004) (noting that to be the applicable standard of review), we overrule it.

Lerma sought a trial separate from Matice because she believed his defense would conflict with hers. And, while there appears of record evidence that it did, a substantial portion of the evidence dealt with the death of R.M. (another child of Lerma and Matice), the relationship between Lerma and Matice before and after that child's death, their

respective conduct or inaction culminating in the child's death, and their failure to acknowledge or accept any responsibility for the death or injuries causing it. In other words, the evidence to be used against both parents was highly interwoven if not identical. Moreover, and irrespective of who actually injured R.M. and who closed an eye to the injuries, that both did one or the other was evidence supporting termination of the parental rights of both. Given this, we cannot say that the trial court abused its discretion in refusing to separately try the claims levied against the parents. *See In re J.W.,* 113 S.W.3d at 612-13 (Tex. App.–Dallas 2003, pet. denied), *cert. denied,* 543 U.S. 965, 125 S.Ct. 419, 160 L.Ed.2d 334 (2004) (finding that the trial court did not abuse its discretion in overruling the request to sever claims for separate trial when the same assertion was made against both parents and the same facts and conditions concerning the home they shared, their care and supervision of the children, and the best interests of the children were involved).

*Admission of Photographs*

By her third issue, Lerma claims the trial court erred in admitting seven autopsy photographs of R.M. The photographs were allegedly irrelevant or, if relevant, their prejudicial value outweighed their probative effect. We overrule the issue.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. Whether the trial court erred in rejecting an objection founded upon Rule 403 depends upon whether it abused its discretion. *Wyatt v. State,* 23 S.W.3d 18, 29 (Tex. Crim. App. 2000).

Next, pictures are generally relevant and admissible if verbal testimony of the matters depicted is also admissible, unless their probative value outweighs their prejudicial effect. *Ramirez v. State,* 815 S.W.2d 636, 647 (Tex. Crim. App. 1991). Furthermore, the

3

trial court does not abuse its discretion in admitting photographs if they will help the jury to understand verbal testimony such as technical language used by a medical doctor in describing injuries sustained. *Hernandez v. State,* 118 S.W.3d 469, 478 (Tex. App.–Eastland 2003, pet. ref'd). Finally, that a picture may be gruesome is not necessarily justification to exclude it. *Sonnier v. State,* 913 S.W.2d 511, 519 (Tex. Crim. App. 1995).

The photographs in question were used by Dr. Rolf Habersang to describe the injuries sustained by R.M. He testified that they would assist him in explaining those injuries and showing their severity to the jury. Although he also stated that he could explain them and the cause of death through medical records alone, he opined that they would be more understandable with the help of pictures. And, while Habersang did agree that Exhibit No. 13, which portrayed healing rib fractures, did not provide any additional information that he could not tell the jury, he nonetheless stated that it would probably help the jury to see the rib fractures and understand that the child sustained those fractures.

Because much of the State's case was founded upon the contention that one of the parents had abused R.M. while the other failed to prevent that abuse, the photographs were relevant to show that the child had sustained multiple injuries over time and that those injuries were not accidental. Thus, the trial court could have reasonably concluded both that the pictures were relevant and that their relevance was not substantially outweighed by their potential for unfair prejudice.

*Testimony of David Lee*

Next, Lerma argues that Sergeant David Lee, who was present at the autopsy, should not have been allowed to authenticate the autopsy photographs discussed in the

4

previous issue because his name was not disclosed in response to Lerma's request for disclosures under Rule194 of the Rules of Civil Procedure.

A party who fails to make, amend, or supplement a discovery response generally may not introduce in evidence the material or information that was not timely disclosed or offer the testimony of the witness who was not timely identified; however, he may if the trial court finds 1) there was good cause for the failure, or 2) the failure will not unfairly surprise or prejudice the other parties. TEX. R. CIV. P. 193.6(a). Here, the State concedes that it did not list Sergeant Lee as a person with knowledge of relevant facts in response to Lerma's request for disclosures. However, the State represented to the trial court that its file had been available to Lerma, that Lee's name was on the witness list provided to Lerma pursuant to the trial court's pre-trial scheduling order, and that Lerma had received and was aware of the photographs.[2] Lerma did not contest these representations. Furthermore, the only substantive testimony given by Lee involved his authentication of the pictures. And, that Lerma previously knew of the pictures and the State's intent to use them at trial is beyond dispute; she had previously sought their exclusion under the grounds discussed in the preceding issue. So what we have before us is a situation wherein Lerma knew of the substantive evidence in question and of the State's intent to offer it, but she did not know the identity of the individual through whom the evidence would be offered. Given this and the circumstance that the officer addressed little more than evidence about which Lerma already knew, the trial court could have reasonably determined that Lerma was not unfairly surprised or prejudiced by Lee's testimony.

*Sufficiency of the Evidence*

---

[2]The State's witness list does not appear in the record.

Next, Lerma attacks the legal and factual sufficiency of the evidence supporting the decision to terminate her parental rights. It neither supported the statutory grounds for termination nor established that termination was in the best interests of the child, she posits. We overrule the issues.

The applicable standard of review is discussed in *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002) and *In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002). We refer the litigants to those cases for its discussion. Furthermore, it is clear that the decision before us may be affirmed if the evidence supports the existence of one statutory ground warranting termination, assuming, of course, that the State also proved that termination was in the best interest of the children. *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003); *In re P.E.W.,* 105 S.W.3d 771, 777 (Tex. App.–Amarillo 2003, no pet.).

Next, of the various statutory grounds upon which the trial court terminated Lerma's rights, one involved her engaging in conduct or knowingly placing the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child. *See* TEX. FAM. CODE ANN. §161.001(1)(E) (Vernon Supp. 2005). To satisfy that ground, the complainant need not prove that the child was the focus of the conduct or actually harmed by it. *In re C.J.F.,* 134 S.W.3d 343, 351 (Tex. App.–Amarillo 2003, pet. denied). Rather, it is enough to show that the parent pursued a course of conduct having the effect of endangering the child. *Id.* at 352. Further, it is inconsequential that the parental conduct occurred before or after the child's birth. *Id.* With this said, we turn to the respective contentions of Lerma.

Regarding the statutory ground and the State's satisfaction of it, we see that the record contains evidence from Dr. Rolf Habersang, a pediatrician who specialized in critical

6

care and treated R.M. when she was brought into the emergency room. According to Habersang, R.M. suffered from a traumatic layered brain injury. In other words, the trauma consisted of at least two separate injuries with one being acute and one being older. The acute portion of her injury had occurred within six to eight hours before the child was brought to the hospital. The other was more than three or four days old and could not have been caused by a fall. Additionally, a portion of R.M.'s brain had already died when she arrived at the hospital.

There was also evidence of R.M. having suffered hemorrhages in her eyes. This rarely occurred in a child who had not suffered traumatic brain injury due to abuse, the evidence depicted. Additionally, the injury should have caused inflammation and severe pain which have would resulted in noticeable irritability and crying. So too did the evidence illustrate that P.M.'s birth sister had bruising to her skull caused by a major force, fractured ribs some three to four weeks old, injury to the side of her head, and injury to her ear.

Other evidence showed that 1) Lerma confessed to, but later denied, shaking R.M. before death, 2) Lerma also gave conflicting testimony regarding what happened to the baby, 3) Matice initially gave no explanation for the child's injuries but later indicated that she may have fallen off a couch or been injured by the ambulance workers, 4) Lerma claimed that R.M. did not cry and was always happy, 5) Lerma claimed not to know until shortly before trial that Matice had a significant criminal history which included a charge for child endangerment, though other evidence tended to contradict this, 6) Lerma continued to live with Matice after the death of R.M. and two and half years later gave birth to P.M., 7) Matice had struck Lerma both before and after the birth of P.M., 8) R.M. had suffered multiple injuries over a period of time, 9) Matice tested positive for cocaine several times

7

after the Department of Family and Protective Services took custody of P.M., though Lerma denied having any knowledge of his drug use, 10) Lerma admitted that she and Matice were the only ones that had care of R.M. (other than Lerma's mother) immediately prior to R.M. suffering the injuries leading to her death, 11) Lerma testified that she might let Matice see P.M. if he was not using drugs, 12) Lerma knew that Matice took medication to control his temper, 13) Norma Backs, who counseled with Lerma and Matice, found both parents inconsistent and deceptive in the things they told her, 14) Backs found Lerma to have a low I.Q. and to be a dependent type of personality who would need someone to assist her with basic life skills, 15) Backs did not believe it was an obtainable goal for Lerma to have a home and take care of her daughter by herself, 16) Backs questioned Lerma's parenting skills and did not see much improvement in them, and 17) Backs did not believe that Lerma could appropriately parent the child even with the help of her own parents.

From the foregoing, a jury reasonably could have formed a firm conviction and belief that Lerma engaged in conduct or knowingly placed the child with persons who engaged in conduct endangering the physical or emotional well-being of P.M. And, while evidence appeared of record indicating that Lerma was employed, that she had attended and completed the classes that the State required her to take, that Lerma's bonding with P.M. had improved, that Lerma loved P.M., and that Lerma would not allow Matice to see the child and would try to protect her, the jury could have chosen to believe from Lerma's previous conduct that she either would or could not care for and protect the child.

As to the best interests of P.M., we note that the evidence establishing a statutory ground for termination may also be used to support a finding that the best interests of the

8

child warranted termination of the parent/child relationship. *In re C.H.,* 89 S.W.3d at 28; *In re P.E.W.,* 105 S.W.3d at 779. Other indicia susceptible to consideration are: 1) the desires of the child; 2) the emotional and physical needs of the child now and in the future; 3) the emotional and physical danger to the child now and in the future; 4) the parental abilities of the individuals seeking custody; 5) the programs available to assist those individuals to promote the best interests of the child; 6) the plans for the child by those individuals or by the agency seeking custody; 7) the stability of the home or proposed placement; 8) the acts or omissions of the parent which may indicate that the existing parent/child relationship is not a proper one; and 9) any excuse for the acts or omissions of the parent. *In re P.E.W.,* 105 S.W.3d at 779-80. Not all of these indicia need be shown to favor termination, however. *Id.* at 780. Rather, all the State need do is present enough evidence from which the factfinder can reasonably form a firm belief or conviction that the child's best interests warrants termination. *In re P.E.W.,* 105 S.W.3d at 780.

Next, in addition to that which has already been discussed, there was evidence that 1) P.M. was a year and a half old at the time of trial, 2) she had lived with the same foster family since being removed from the care of Lerma at the age of three months, 3) she was thriving with and bonding to her foster family, and 4) the foster family planned to adopt her. Also of record was evidence that 1) Lerma's parents were not considered an appropriate placement, 2) they were not considered appropriate because they had allowed Matice (a 29-year-old male who they did not know) to move into their house after his release from prison and impregnate Lerma (who was 17 at the time), 3) they refused to believe that either Lerma or Matice had injured R.M., 4) Lerma's mother had made statements that she

would allow Matice to see the child if the child were in her custody, though she later denied making them, and 5) P.M. needed a permanent placement in a stable environment.

Testimony that a mother cannot provide a stable, safe, and secure environment supports a finding that it is in a child's best interest to terminate the mother's rights. *See Hann v. Texas Dep't of Protective & Regulatory Services,* 969 S.W.2d 77, 83-84 (Tex. App.–El Paso 1998, pet. denied) (upholding the termination because evidence appeared of record illustrating that the parent could not provide such an environment). Such evidence appears of record and it was enough to enable the factfinder to reasonably form a firm conviction or belief that termination was in P.M.'s best interest.

Having overruled each issue, we affirm the order terminating the parental relationship between Lerma and P.M.

Brian Quinn
Chief Justice
