NO. 07-04-0595-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



FEBRUARY 22, 2006


______________________________



IN THE INTEREST OF P.M., A CHILD 


_________________________________



FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;



NO. 33,151; HON. PHIL VANDERPOOL, PRESIDING


_______________________________


Memorandum Opinion


_______________________________



Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

 Connie Lerma (Lerma) appeals from an order terminating the parental relationship
between herself and her daughter P.M. (1) She raises seven issues. We consider them in
the sequence urged and, upon doing so, affirm the order.

 Denial of Continuance

 Lerma first argues that the trial court abused its discretion in denying her motion to
continue the trial. We overrule the issue.

 The record discloses that Lerma sought a continuance to afford her new appointed
counsel additional time to prepare for trial. Authority holds that absent a strong and
specific showing of what additional preparation might have been made had the
continuance been granted, the trial court may deny a continuance without abusing its
discretion. Standard Sav. Ass'n v. Cromwell, 714 S.W.2d 49, 51 (Tex. App.-Houston [14th
Dist.] 1986, no writ). The record before us contains no such evidence. None was tendered
at the hearing held upon the motion. And, while the motion itself described the voluminous
documentation counsel had to peruse and the opposing witnesses he had to interview, the
item was neither verified nor supported by affidavit. Given that factual recitations contained
in unsworn pleadings are not evidence, Willacy County Appraisal Review Bd. v. South
Padre Land Co., 767 S.W.2d 201, 204 (Tex. App.-Corpus Christi 1989, no writ), counsel's
representations in his motion were of no probative value.

 In short, we have concerns about the extremely abbreviated time within which the
trial court afforded counsel to prepare for trial. See Villegas v. Carter, 711 S.W.2d 624,
626 (Tex. 1986) (holding that a trial court must afford new counsel reasonable time to
prepare for trial). Nonetheless, Lerma did not show how the trial court's decision harmed
her. Consequently, we cannot say that the trial court abused its discretion. 

 Motion for Separate Trials

 Next, Lerma complains of the trial court's failure to grant her a separate trial from
that of P.M.'s father, David Matice (Matice). Upon reviewing that issue under the standard
of abused discretion, see In re B.L.D., 113 S.W.3d 340, 347-48 (Tex. 2003), cert. denied,
541 U.S. 945, 124 S.Ct. 1674, 158 L.Ed.2d 371 (2004) (noting that to be the applicable
standard of review), we overrule it. 

 Lerma sought a trial separate from Matice because she believed his defense would
conflict with hers. And, while there appears of record evidence that it did, a substantial
portion of the evidence dealt with the death of R.M. (another child of Lerma and Matice),
the relationship between Lerma and Matice before and after that child's death, their
respective conduct or inaction culminating in the child's death, and their failure to
acknowledge or accept any responsibility for the death or injuries causing it. In other
words, the evidence to be used against both parents was highly interwoven if not identical. 
Moreover, and irrespective of who actually injured R.M. and who closed an eye to the
injuries, that both did one or the other was evidence supporting termination of the parental
rights of both. Given this, we cannot say that the trial court abused its discretion in refusing
to separately try the claims levied against the parents. See In re J.W., 113 S.W.3d at 612-13 (Tex. App.-Dallas 2003, pet. denied), cert. denied, 543 U.S. 965, 125 S.Ct. 419, 160
L.Ed.2d 334 (2004) (finding that the trial court did not abuse its discretion in overruling the
request to sever claims for separate trial when the same assertion was made against both
parents and the same facts and conditions concerning the home they shared, their care
and supervision of the children, and the best interests of the children were involved). 

 Admission of Photographs

 By her third issue, Lerma claims the trial court erred in admitting seven autopsy
photographs of R.M. The photographs were allegedly irrelevant or, if relevant, their
prejudicial value outweighed their probative effect. We overrule the issue. 

 Although relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. Whether the trial court
erred in rejecting an objection founded upon Rule 403 depends upon whether it abused
its discretion. Wyatt v. State, 23 S.W.3d 18, 29 (Tex. Crim. App. 2000). 

 Next, pictures are generally relevant and admissible if verbal testimony of the
matters depicted is also admissible, unless their probative value outweighs their prejudicial
effect. Ramirez v. State, 815 S.W.2d 636, 647 (Tex. Crim. App. 1991). Furthermore, the
trial court does not abuse its discretion in admitting photographs if they will help the jury
to understand verbal testimony such as technical language used by a medical doctor in
describing injuries sustained. Hernandez v. State, 118 S.W.3d 469, 478 (Tex.
App.-Eastland 2003, pet. ref'd). Finally, that a picture may be gruesome is not necessarily
justification to exclude it. Sonnier v. State, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995). 

 The photographs in question were used by Dr. Rolf Habersang to describe the
injuries sustained by R.M. He testified that they would assist him in explaining those
injuries and showing their severity to the jury. Although he also stated that he could explain
them and the cause of death through medical records alone, he opined that they would be
more understandable with the help of pictures. And, while Habersang did agree that
Exhibit No. 13, which portrayed healing rib fractures, did not provide any additional
information that he could not tell the jury, he nonetheless stated that it would probably help
the jury to see the rib fractures and understand that the child sustained those fractures. 

 Because much of the State's case was founded upon the contention that one of the
parents had abused R.M. while the other failed to prevent that abuse, the photographs
were relevant to show that the child had sustained multiple injuries over time and that those
injuries were not accidental. Thus, the trial court could have reasonably concluded both
that the pictures were relevant and that their relevance was not substantially outweighed
by their potential for unfair prejudice. 

 Testimony of David Lee

 Next, Lerma argues that Sergeant David Lee, who was present at the autopsy,
should not have been allowed to authenticate the autopsy photographs discussed in the
previous issue because his name was not disclosed in response to Lerma's request for
disclosures under Rule194 of the Rules of Civil Procedure. 

 A party who fails to make, amend, or supplement a discovery response generally
may not introduce in evidence the material or information that was not timely disclosed or
offer the testimony of the witness who was not timely identified; however, he may if the trial
court finds 1) there was good cause for the failure, or 2) the failure will not unfairly surprise
or prejudice the other parties. Tex. R. Civ. P. 193.6(a). Here, the State concedes that it
did not list Sergeant Lee as a person with knowledge of relevant facts in response to
Lerma's request for disclosures. However, the State represented to the trial court that its
file had been available to Lerma, that Lee's name was on the witness list provided to
Lerma pursuant to the trial court's pre-trial scheduling order, and that Lerma had received
and was aware of the photographs. (2) Lerma did not contest these representations. 
Furthermore, the only substantive testimony given by Lee involved his authentication of the
pictures. And, that Lerma previously knew of the pictures and the State's intent to use
them at trial is beyond dispute; she had previously sought their exclusion under the
grounds discussed in the preceding issue. So what we have before us is a situation
wherein Lerma knew of the substantive evidence in question and of the State's intent to
offer it, but she did not know the identity of the individual through whom the evidence would
be offered. Given this and the circumstance that the officer addressed little more than
evidence about which Lerma already knew, the trial court could have reasonably
determined that Lerma was not unfairly surprised or prejudiced by Lee's testimony.

 Sufficiency of the Evidence

 Next, Lerma attacks the legal and factual sufficiency of the evidence supporting the
decision to terminate her parental rights. It neither supported the statutory grounds for
termination nor established that termination was in the best interests of the child, she
posits. We overrule the issues.

 The applicable standard of review is discussed in In re J.F.C., 96 S.W.3d 256, 266
(Tex. 2002) and In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). We refer the litigants to those
cases for its discussion. Furthermore, it is clear that the decision before us may be
affirmed if the evidence supports the existence of one statutory ground warranting
termination, assuming, of course, that the State also proved that termination was in the
best interest of the children. In re A.V., 113 S.W.3d 355, 362 (Tex. 2003); In re P.E.W.,
105 S.W.3d 771, 777 (Tex. App.-Amarillo 2003, no pet.). 

 Next, of the various statutory grounds upon which the trial court terminated Lerma's
rights, one involved her engaging in conduct or knowingly placing the child with persons
who engaged in conduct which endangered the physical or emotional well-being of the
child. See Tex. Fam. Code Ann. §161.001(1)(E) (Vernon Supp. 2005). To satisfy that
ground, the complainant need not prove that the child was the focus of the conduct or
actually harmed by it. In re C.J.F., 134 S.W.3d 343, 351 (Tex. App.-Amarillo 2003, pet.
denied). Rather, it is enough to show that the parent pursued a course of conduct having
the effect of endangering the child. Id. at 352. Further, it is inconsequential that the
parental conduct occurred before or after the child's birth. Id. With this said, we turn to the
respective contentions of Lerma.

 Regarding the statutory ground and the State's satisfaction of it, we see that the
record contains evidence from Dr. Rolf Habersang, a pediatrician who specialized in critical
care and treated R.M. when she was brought into the emergency room. According to
Habersang, R.M. suffered from a traumatic layered brain injury. In other words, the trauma
consisted of at least two separate injuries with one being acute and one being older. The
acute portion of her injury had occurred within six to eight hours before the child was
brought to the hospital. The other was more than three or four days old and could not have
been caused by a fall. Additionally, a portion of R.M.'s brain had already died when she
arrived at the hospital. 

 There was also evidence of R.M. having suffered hemorrhages in her eyes. This
rarely occurred in a child who had not suffered traumatic brain injury due to abuse, the
evidence depicted. Additionally, the injury should have caused inflammation and severe
pain which have would resulted in noticeable irritability and crying. So too did the evidence
illustrate that P.M.'s birth sister had bruising to her skull caused by a major force, fractured
ribs some three to four weeks old, injury to the side of her head, and injury to her ear.

 Other evidence showed that 1) Lerma confessed to, but later denied, shaking R.M.
before death, 2) Lerma also gave conflicting testimony regarding what happened to the
baby, 3) Matice initially gave no explanation for the child's injuries but later indicated that
she may have fallen off a couch or been injured by the ambulance workers, 4) Lerma
claimed that R.M. did not cry and was always happy, 5) Lerma claimed not to know until
shortly before trial that Matice had a significant criminal history which included a charge for
child endangerment, though other evidence tended to contradict this, 6) Lerma continued
to live with Matice after the death of R.M. and two and half years later gave birth to P.M.,
7) Matice had struck Lerma both before and after the birth of P.M., 8) R.M. had suffered
multiple injuries over a period of time, 9) Matice tested positive for cocaine several times
after the Department of Family and Protective Services took custody of P.M., though Lerma
denied having any knowledge of his drug use, 10) Lerma admitted that she and Matice
were the only ones that had care of R.M. (other than Lerma's mother) immediately prior to
R.M. suffering the injuries leading to her death, 11) Lerma testified that she might let
Matice see P.M. if he was not using drugs, 12) Lerma knew that Matice took medication
to control his temper, 13) Norma Backs, who counseled with Lerma and Matice, found both
parents inconsistent and deceptive in the things they told her, 14) Backs found Lerma to
have a low I.Q. and to be a dependent type of personality who would need someone to
assist her with basic life skills, 15) Backs did not believe it was an obtainable goal for
Lerma to have a home and take care of her daughter by herself, 16) Backs questioned
Lerma's parenting skills and did not see much improvement in them, and 17) Backs did not
believe that Lerma could appropriately parent the child even with the help of her own
parents.

 From the foregoing, a jury reasonably could have formed a firm conviction and belief
that Lerma engaged in conduct or knowingly placed the child with persons who engaged
in conduct endangering the physical or emotional well-being of P.M. And, while evidence
appeared of record indicating that Lerma was employed, that she had attended and
completed the classes that the State required her to take, that Lerma's bonding with P.M.
had improved, that Lerma loved P.M., and that Lerma would not allow Matice to see the
child and would try to protect her, the jury could have chosen to believe from Lerma's
previous conduct that she either would or could not care for and protect the child. 

 As to the best interests of P.M., we note that the evidence establishing a statutory
ground for termination may also be used to support a finding that the best interests of the
child warranted termination of the parent/child relationship. In re C.H., 89 S.W.3d at 28;
In re P.E.W., 105 S.W.3d at 779. Other indicia susceptible to consideration are: 1) the
desires of the child; 2) the emotional and physical needs of the child now and in the future;
3) the emotional and physical danger to the child now and in the future; 4) the parental
abilities of the individuals seeking custody; 5) the programs available to assist those
individuals to promote the best interests of the child; 6) the plans for the child by those
individuals or by the agency seeking custody; 7) the stability of the home or proposed
placement; 8) the acts or omissions of the parent which may indicate that the existing
parent/child relationship is not a proper one; and 9) any excuse for the acts or omissions
of the parent. In re P.E.W., 105 S.W.3d at 779-80. Not all of these indicia need be shown
to favor termination, however. Id. at 780. Rather, all the State need do is present enough
evidence from which the factfinder can reasonably form a firm belief or conviction that the
child's best interests warrants termination. In re P.E.W., 105 S.W.3d at 780. 

 Next, in addition to that which has already been discussed, there was evidence that
1) P.M. was a year and a half old at the time of trial, 2) she had lived with the same foster
family since being removed from the care of Lerma at the age of three months, 3) she was
thriving with and bonding to her foster family, and 4) the foster family planned to adopt her. 
Also of record was evidence that 1) Lerma's parents were not considered an appropriate
placement, 2) they were not considered appropriate because they had allowed Matice (a
29-year-old male who they did not know) to move into their house after his release from
prison and impregnate Lerma (who was 17 at the time), 3) they refused to believe that
either Lerma or Matice had injured R.M., 4) Lerma's mother had made statements that she
would allow Matice to see the child if the child were in her custody, though she later denied
making them, and 5) P.M. needed a permanent placement in a stable environment. 

 Testimony that a mother cannot provide a stable, safe, and secure environment
supports a finding that it is in a child's best interest to terminate the mother's rights. See
Hann v. Texas Dep't of Protective & Regulatory Services, 969 S.W.2d 77, 83-84 (Tex.
App.-El Paso 1998, pet. denied) (upholding the termination because evidence appeared
of record illustrating that the parent could not provide such an environment). Such
evidence appears of record and it was enough to enable the factfinder to reasonably form
a firm conviction or belief that termination was in P.M.'s best interest. 

 Having overruled each issue, we affirm the order terminating the parental
relationship between Lerma and P.M.


 Brian Quinn

 Chief Justice

 

 

 
1. The parental rights of the father David Matice were also terminated, but he has not appealed. 
2. The State's witness list does not appear in the record.